GEORGE C. HILL, et al. Appellants, vs. WILLIAM OLIVER
HILL, et al. Appellees.

*Opinion filed June 16, 1914—Rehearing denied October 7, 1914.*

1. REMAINDERS—*vested remainder defined.* A vested remainder is an estate of which there is a present right in a determinate person of future enjoyment after the termination of the particular estate.

2. SAME—*contingent remainder defined.* A contingent remainder is one limited to take effect either to an uncertain person or upon an uncertain event.

3. SAME—*a remainder subject to contingency may not be contingent remainder.* It is not always true that a remainder which is subject to a contingency is a contingent remainder, since if the contingency upon which the remainder depends is a condition precedent the remainder is contingent, while if the contingency is a condition subsequent the remainder is vested though the happening of the condition subsequent may divest it.

4. DEEDS—*example of double contingent remainder.* A deed to the grantor's daughter, to her sole and separate use during her natural life, and after her death to the sole use, benefit and behoof of the child or children of her body, their heirs and assigns forever, and in the event of her death leaving no child or children her issue her surviving, then to the heirs-at-law of the grantor, their heirs and assigns forever, creates a life estate in the daughter with a double contingent remainder, first to her children if any survive her, and second, to the grantor's heirs if no children survive her. (*Furnish* v. *Rogers,* 154 Ill. 569, and *Golladay* v. *Knock,* 235 id. 412, followed; *Ducker* v. *Burnham,* 146 id. 9, and *Hinrichsen* v. *Hinrichsen,* 172 id. 462, distinguished.)

5. SAME—*what essential to constitute merger.* While a merger will occur and a contingent remainder will be destroyed where the life estate and the reversion unite in one person, yet it is essential that there be a deed conveying the reversion or life estate, and a mere bond for deed is not sufficient.

6. SAME—*prior to Married Women's act a married woman was not bound by covenants in deed.* Prior to the passage of the Married Women's act covenants in a warranty deed in which the wife joined imposed no personal obligation upon her either at law or in equity, nor were they binding upon her heirs.

7. JUDICIAL SALES—*a contingent remainder cannot be the subject of a sale.* A contingent remainder cannot be the subject of sale nor be conveyed voluntarily by deed, except that a warranty

deed may transfer the title, by way of estoppel, after the happening of the contingency.

8. COURTS—*when rule that equity may decree sale of all interests in land does not apply.* The rule that a court of equity, in order to preserve the estate, may, under certain circumstances, decree a sale of real estate so as to extinguish all interests, whether contingent or otherwise, does not apply where the only interest to be affected is a contingent remainder, as in such case there is no subject matter to be acted upon.

APPEAL from the Circuit Court of McLean county; the Hon. C. D. MYERS, Judge, presiding.

This is an appeal by the complainants from a decree of the circuit court of McLean county dismissing a bill for the partition of 120 acres of land in that county and quieting the title to the property in fee simple in two of the defendants in accordance with the prayer of a cross-bill filed by them. The parties claim title, respectively, from William H. Hodge, who formerly owned the premises and conveyed them on May 22, 1848, to Mary Jane Hill, to have and to hold to her and to her heirs "to and for the following uses, to-wit: To the sole and separate use of the said Mary Jane Hill for the term of and during her natural life and from and after her decease or determine said estate, to the sole use, benefit and behoof of the child and children of her body, their heirs and assigns forever; and in the event of the death of the said Mary Jane Hill leaving no child or children her issue her surviving, then and in that case to the heirs-at-law of him, the said William H. Hodge, their heirs and assigns forever." Mary Jane Hill was the daughter of William H. Hodge and at the date of the deed had no children, but two children were born to her prior to February 16, 1853, on which day she, together with her husband, Pleasant M. Hill, executed a warranty deed of conveyance of the premises in fee simple to John Niccolls. On March 11, 1853, William H. Hodge gave John Niccolls a bond for a deed for the premises for

$1760, of which $700 was paid in cash and a note payable in one year was given for the balance. There was no evidence that any deed was made, but the note was not found among the papers of William H. Hodge after his death, which occurred in 1875. On July 5, 1853, William H. Hodge was appointed guardian of the two infant children of his daughter upon his petition representing that they had recently migrated to the territory of Oregon leaving some interests in real estate in McLean county, and at the September term, 1854, of the circuit court of McLean county, on his petition as guardian of Melbourne Hill and George Hill, the two minor children, he was ordered to sell the land described and invest the proceeds of such sale in the purchase of other real estate in the name of said minors, as soon as practicable, in some one of the States or territories of this Union. He afterward reported a sale of the land on March 2, 1855, to John Niccolls for $11 an acre, amounting to $1320, which he had immediately sent to Oregon for the purpose of investment in lands in that territory for and in the name of the said minors, but he had not yet received any certificate of the purchase of the land in Oregon. The report was approved and a deed made to John Niccolls on March 10, 1855. Niccolls and his grantees have been in possession of the land since 1854. Mayer Livingston and Abe Livingston have succeeded, through *mesne* conveyances, to his title. Mary Jane Hill died in June, 1910. Melbourne Hill died in 1882, leaving four children. George Hill survived his mother and is one of the complainants. The other complainants are the children of Mary Jane Hill who survived her, except Joseph D. Hill, who is a son of Melbourne Hill. The other children of Melbourne Hill are defendants. Mayer Livingston and Abe Livingston are the only defendants who answered, and they claim title to the premises in fee simple.

BARRY & MORRISSEY, for appellants.

LIVINGSTON & BACH, (ALBERT M. KALES, and SIG-
MUND LIVINGSTON, of counsel,) for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

The first question is the character of the estate limited
by the deed of William H. Hodge after the termination of
the life estate of Mary Jane Hill. The appellees claim that
the remainder to her children vested immediately upon the
birth of any child, subject only to be divested in the event
of her death leaving no child surviving her. The appellants
claim that the remainder was contingent until the death of
Mrs. Hill, when it would vest, according to the event of
her leaving or not leaving children surviving, either in her
then living children or the heirs of William H. Hodge. A
vested remainder is an estate of which there is a present
fixed right in a determinate person of future enjoyment
after the determination of the particular estate. A con-
tingent remainder is one limited to take effect either to an
uncertain person or upon an uncertain event, but it is not
always true that a remainder which is subject to a contin-
gency is a contingent remainder. If the contingency upon
which the remainder depends is a condition precedent the
remainder is contingent; if subsequent, the remainder is
vested though the happening of the condition subsequent
may divest it. *Golladay* v. *Knock,* 235 Ill. 412; *Haward*
v. *Peavey,* 128 id. 430.

It is sometimes a matter of less difficulty to state the
rules which distinguish a contingent from a vested remain-
der than to apply those rules to the particular instrument to
be construed, but in this instance the particular question has
been passed upon in the case of *Furnish* v. *Rogers,* 154 Ill.
569. In that case the testator devised to his grand-niece,
Jessie Starkweather, certain real estate and personal prop-
erty, with this further provision: "All of which is to go
to her children, should she marry; if she should die child-
less, then it is to be divided between her mother and the

rest of my grand-nieces and nephews who will appear and give evidence of such." Jessie Starkweather at the time of the devise was unmarried, but she afterward married and had one child, whose guardian filed a bill to construe the will and to sell her interest in the lands. It was held that the child had no interest which could be sold by the guardian but that her interest was a contingent remainder, the court saying (p. 571) : "The language employed designates the children as those who take the remainder, and the estate does not vest in them, as an absolute fee simple title to them and their heirs forever, until the death of Jessie, as it is further provided that if she die childless the estate is to be divided among her mother and the rest of the testator's grand-nieces and nephews, etc., whose estate is contingent upon the death of Jessie without a surviving child or children or the descendants of such child or children, in which case the takers of the remainder are substituted for surviving children. By the first clause of the will Jessie Starkweather takes an estate for life in the house, lots and land and in the $500 therein bequeathed. The remainder is a concurrent, contingent remainder with a double aspect, to be determined immediately upon the death of Jessie, as at that moment it will vest in her child or children, or the descendants of such child or children, that survive her, and in default of such survival the remainder would vest in the mother of Jessie and the other grand-nieces and nephews of the testator."

In *Golladay* v. *Knock, supra,* the will of George Golladay devised personal property and real estate to his wife, Nancy Golladay, "and to her children after her death; and if the said Nancy Golladay does not have children that will live to inherit said real estate, that the said real estate, at the death of Nancy Golladay and her children, fall to Moses Golladay and his heirs, of said county." At the death of the testator Nancy Golladay had no child but afterward married and had a daughter, who died before her mother.

The language just quoted from *Furnish* v. *Rogers* was referred to in the opinion as furnishing the correct rule of decision, and it was held that the will gave to Nancy Golladay a life estate with a contingent remainder with a double aspect, to be determined upon the death of the life tenant. The court said, on page 417: "A remainder is vested when a definite interest is created in a certain person and no further condition is imposed than the determination of the precedent estate. It is not sufficient that there is a person in being who has the present capacity to take the remainder if the particular estate be presently determined. It must also appear that there are no other contingencies which may intervene to defeat the estate before the falling in of the particular estate."

In *Boatman* v. *Boatman*, 198 Ill. 414, a devise was made to Emory Boatman, subject to the following condition: "The share of the real estate that my son Emory gets under this will is only a life estate. He is to have the use, rents and proceeds of said land, after paying taxes and necessary repairs, so long as he may live. At his death, if he leaves any child or children surviving him, then said land is to go to such child or children, but if he dies leaving no child or children surviving him then said lands to go to his brothers and sisters." Upon the death of Emory Boatman leaving no child it was held that the remainder to his brothers and sisters was vested, and that the wife of one of his brothers (who died in Emory's lifetime leaving no children) took by descent one-half of her deceased husband's share in the remainder after the expiration of Emory Boatman's life estate. This was overruled by *Golladay* v. *Knock, supra,* and it was said in reference to the *Boatman case* (p. 420): "In that case, on page 420, a definition of a vested remainder was given, as follows: 'A vested remainder is an estate to take effect after another estate for years, life or in tail, which is so limited that if that particular estate were to expire or end in any way at the pres-

ent time, some certain person who was *in esse* and answered the description of the remainder-man during the continuance of. the particular estate would thereupon become entitled to the immediate possession, irrespective of the concurrence of any collateral contingency.' This definition is not erroneous when all of the language embraced within it is properly considered. · The definition, however, is very erroneous and misleading unless the modifying clause introduced by the last eight words employed is constantly kept in mind. The subsequent treatment of the question involved in that case shows that the court applied the definition given, without considering that the death of the life tenant leaving children surviving him was the 'concurrence of a collateral contingency,' which, under the definition given, prevented the interest of the brothers and sisters of Emory Boatman from being a vested remainder. There was in that case, as there is in the case at bar, a collateral contingency to be taken into account,—that is, the death of the life tenant without leaving surviving children before the remainder could become vested. This contingency is a dubious and uncertain event. It could not be known until the death of the life tenant whether this contingency would happen, hence the. remainder was contingent in the *Boatman case* as it is in this."

The appellees rely upon the cases of *Ducker* v. *Burnham,* 146 Ill. 9, and *Hinrichsen* v. *Hinrichsen,* 172 id. 462. In the former a devise was made to the wife of the testator for life and after her death to his five children whom he had previously named, share and share alike, with the provision that in case of the death of any of his said children without issue before receiving the portion given to him or her, the share of such child should be equally divided among his surviving children. The court found, in the context, language which was a distinct recognition of the fact that the share of each child had been given to him before the distribution at the termination of the life estate should

264 — 15

take place and which imported that each child had a share before the period of distribution should arrive, and that although the time of its enjoyment was postponed it had theretofore vested, subject to being divested upon his death without issue. The devise was to certain named children, with no words of contingency, and with a subsequent provision that if any of such named children die before the wife then the property was to be equally divided among the survivors. In such case it is held "the devise of the remainder is to certain definitely specified and named individuals, who, as remainder-men, already answer to the description by which they are to take and there is no obstacle to suppose an immediate vesting to have been intended." In the present case there is no grant to individuals but only to a class not in existence, which might never come into existence and could not be ascertained until the death of the life tenant. There was no recognition of a gift to any member of the class, or of a share or portion belonging or given to anyone who did not survive the period of distribution, or of a substitution of children or survivors for those who did not survive. There was a single grant, without qualification, at the expiration of the life estate, to the children of the life tenant, or if there were none then living, to the heirs of the grantor.

In *Hinrichsen* v. *Hinrichsen, supra,* there was a devise in fee to two brothers after the termination of a life estate, and a provision in a subsequent clause that if either died without leaving legal heirs of his body the survivor should have the estate. It was held that it was not a case of a contingent remainder but of a fee dependent upon a condition subsequent which might divest it and cause another fee to be substituted. In the deed now in question the grantor in a single sentence provides for the contingency in its double aspect. Which of the two classes shall take under the will can be determined only at the death of the life tenant, and depends upon the contingency of chil-

dren surviving. If no children survive, the heirs take; if
children survive, they take. The contingency inheres in the
grant to the one class as much as to the other. The grant
was to Mary Jane Hill for life with remainder to her
children, if any survived her; if not, to her father's heirs.
The condition applied to each class, and not until her death
could there be said to be any fixed right in any person to
the enjoyment of the possession after the termination of
the life estate.

If the remainder to Mrs. Hill's children was contin-
gent, clearly no rights could be acquired under the guard-
ian's sale. (*Haward* v. *Peavey, supra; Furnish* v. *Rogers,
supra.*) The appellees contend, however, that by the deed
of February 16, 1853, John Niccolls became invested with
the life estate of Mary Jane Hill; that if the remainder
was contingent the reversion in fee, pending its vesting,
remained in William H. Hodge, and that he conveyed that
reversion to John Niccolls pursuant to his bond for a deed
·given to Niccolls on March 11, 1853. If such a deed was
made, the reversion and the life estate uniting in Niccolls
would merge and the contingent remainders be destroyed.
(*Bond* v. *Moore,* 236 Ill. 576.) There is no evidence, how-
ever, that such a deed was executed. The appellees seek to
draw an inference of such execution from the lapse of time
and long possession under a claim of right. The appellees'
possession was taken under the deed conveying the life es-
tate, and their claim of title was no doubt always what it
is here now,—that the guardian's deed conveyed the title to
the remainder. No doubt that deed was regarded as satis-
fying Hodge's bond and no further attention was paid to it.

The appellees contend that the appellants are bound by
an equitable estoppel from claiming the land in controversy
by reason of the warranties in the deed of Mary Jane Hill
and her husband conveying the premises to John Niccolls,
and the fact that upon their death property of value equal
to that of the land now in question descended to their

heirs. This deed does not appear in the abstract. It was not set out in the briefs, but by a petition for a rehearing the appellees have called our attention to the deed as it appears in the record. It contains, among other covenants, one of general warranty of title. At the time it was made the common law disabilities of married women had not been removed and the covenants in the deed imposed upon Mrs. Hill no personal obligation, either at law or in equity. (*Snell* v. *Snell*, 123 Ill. 403.) Therefore they imposed no liability upon her heirs. If it be conceded that the covenants were binding upon the husband and that the supposed estoppel would otherwise exist, a fatal objection, regardless of all others, is, that it does not appear that upon his death property of value equal to that of the land in question descended to the appellants as his heirs. It does appear that the assets of the estates of Pleasant M. Hill and Mary Jane Hill distributed among their heirs were equal in value to the value of the land in this cause, but it does not appear that the value of the assets of the estate of Pleasant M. Hill were equal to the value of the land or to any considerable part of such value. There is no estoppel by reason of a failure to return the proceeds of the guardian's sale, for there is no evidence that any part of such proceeds came to the hands of the appellants.

It is argued on behalf of the appellees that the circuit court of McLean county had power to dispose of the whole fee in remainder in order to save the property for the remainder-men; that the decree of sale at the September term, 1854, was an exercise of this power, and that the proceeds of the sale under that decree were held for all the children instead of the remainder in the land. There is no doubt of the general jurisdiction of courts of chancery in this State over the estates of infants, or of their power, by virtue of this jurisdiction, to order the sale of the whole or a part of their estates and to change the character of such estates. A court of equity has no jurisdiction,

however, to order the sale of a mere contingent remainder. (*Furnish* v. *Rogers, supra.*) Such a remainder is not an estate but is merely the chance of having one. It cannot be the subject of sale, it cannot be levied upon by legal process and cannot be conveyed voluntarily by deed, though a warranty deed may transfer the title, by way of estoppel, after the happening of the contingency and it may be released to the reversioner. (*Haward* v. *Peavey, supra; Ducker* v. *Burnham, supra; Golladay* v. *Knock, supra; Ætna Life Ins. Co.* v. *Hoppin,* 249 Ill. 406; *Walton* v. *Follansbee,* 131 id. 147; *Williams* v. *Esten,* 179 id. 267; *Ortmayer* v. *Elcock,* 225 id. 342.) Where it is necessary for the preservation of the estate or the interests of the parties therein, and where it appears that unless equity interferes the property will be lost to both life tenant and remainder-man, a court of equity may decree the sale of real estate so as to extinguish all interests therein, whether contingent or otherwise, and to protect the rights of all interested therein, whether in being or unborn; and such decree will bind those subsequently born. (*Gavin* v. *Curtin,* 171 Ill. 640.) The decree of September, 1854, was not, and did not purport to be, such a decree. It was a simple decree for the sale of real estate where there was no real estate to be sold. While the decree, in form, directed a sale of real estate, the only interest to be affected was the contingent remainder, which of itself was a mere possibility, not subject to sale. Since there was no interest which could be conveyed there was no subject matter for the court or the decree to act upon, and the decree of sale, and the sale under it, were of no effect.

Neither *laches* nor the Statute of Limitations constitutes any defense to the appellants' bill. They had no estate in the land until after the death of Mrs. Hill, in 1910. Two years later the suit was begun. No Statute of Limitations had run and no act has been shown which has prejudiced the appellees or should estop the appellants. Melbourne

Hill died in his mother's lifetime. Since he did not survive the contingency for the vesting of the estate and there was no provision for his children taking, they have no interest in the estate. The children of Mary Jane Hill who survived her are entitled to have the land equally divided among them.

The decree is reversed and the cause remanded, with directions to render a decree in conformity with this opinion.

*Reversed and remanded, with directions.*