(No. 27122.—Decree affirmed.)
PRESTON K. JOHNSTON, JR., *et al.,* Trustees in Bankruptcy, Appellants, vs. MARK HERRIN *et al.,* Appellees.

*Opinion filed September 21, 1943.*

RAY M. FOREMAN, RUSSELL H. CLASSEN, and EVERETT L. DALBEY, for appellants.

STONE & FOWLER, and SNYDER E. HERRIN, for appellees.

Mr. JUSTICE STONE delivered the opinion of the court:

This is an appeal from a decree of the circuit court of Williamson county construing the will of Ephraim Herrin, deceased, and adjudging that defendants Jeff S. Herrin and Mark Herrin had no interest in the estate of the deceased which might have been levied upon and sold under judicial process, and that no right, title or interest in that estate passed to the respective trustees in bankruptcy in certain bankrupt proceedings instituted by those defendants. The principal question in the case therefore concerns the second and third clauses of the will involved.

Ephraim Herrin died January 5, 1918. His will was executed December 12, 1913. The second clause gave to the testator's widow all of the testator's property, in trust, however, for the following uses and purposes: "To use, control, sell, deliver, convey and dispose of as she may desire, at public or private sale, for cash or on credit as freely in every way as if there was no trust imposed and to apply to her own use all of such property she may desire for maintaining herself and family in the condition in life warranted by her means, and to invest and re-invest such monies as may be in her hands from time to time in such manner as she may in her discretion decide upon, it being my will and desire that, in the handling and exe-

cution of this trust, she will consult with and be guided by John Herrin, her son."

The third clause is as follows: "At the death of my said wife, Fattima Herrin, it is my will that my surviving Executor proceed as rapidly as is consistent with wise management to convert all my remaining estate into money, and, for that purpose, he is hereby authorized and empowered to sell, convey and deliver same at public or private sale for cash or on credit at his discretion, and that the same be equally divided among my surviving descendants in the same shares and proportions as they would be entitled to by the laws of descent of the State of Illinois in the event of my death intestate.

"My said wife, Fattima Herrin, is authorized to make such advancements to my children or descendants as she may see fit but all such advancements must be evidenced by written instruments duly executed, stating their character as advancements, and all shares shall be equalized on final settlement. It is my will and desire that under no circumstances should she make advancements to such an extent as to deprive herself of an ample and substantial income sufficient for all her needs. It is my further will and desire that in the making of such advancements she will consult with and be guided by John Herrin, our son."

His widow, Fattima, and son John Herrin, were named coexecutors.

Ephraim Herrin left him surviving his widow, and John Herrin, Jeff S. Herrin, Mark Herrin and Cora Dawson, his children, as his sole heirs-at-law. Fattima Herrin died January 7, 1939, and John Herrin became the surviving executor of the estate. Prior to the death of Fattima Herrin, Jeff S. Herrin and Mark Herrin filed voluntary petitions in bankruptcy. Jeff's petition was filed December 31, 1934, and Mark's on May 21, 1935. Both were adjudicated bankrupts. Schedules filed by them did not

list as an asset any interest in the Ephraim Herrin estate. Both listed all creditors, including the First National Bank of Herrin through its receiver. The receiver filed a claim and participated in each of said bankruptcy proceedings. No attempt was made to sell the interest of either bankrupt in and to the Ephraim Herrin estate, and no claim was made that such interests passed to the trustee in either bankruptcy proceeding. The respective trustees in the bankrupt estates each filed a final report which was approved by court order, the trustee was discharged, and in each case the bankruptcy proceeding was closed.

Thereafter on November 18, 1938, one Russel H. Classen purchased from the receiver of the First National Bank its claims against the bankrupts, and in 1940, following the death of Fattima Herrin, the widow, Classen petitioned the United States District Court to reopen the bankruptcy proceedings and to appoint successor trustees. Pursuant thereto the court ordered the bankruptcy proceedings reopened and appointed plaintiffs successor trustees. Each bankrupt then filed an amended schedule setting forth the will of Ephraim Herrin.

The successor trustees thereupon filed in the circuit court their complaint in the cause now before us, asking construction of Ephraim Herrin's will and alleging that the interests of the testator's children thereunder were vested remainders during the lifetime of Fattima Herrin. Defendants Jeff S. Herrin and Mark Herrin answered and filed a counterclaim seeking a construction of the will in accordance with their claim that they took no vested interest during the life of the widow, which could have been transferred by any means or which might have been levied upon and sold under judicial process. They also alleged that the original trustees in bankruptcy had knowledge of the will of Ephraim Herrin, did not sell or attempt to sell defendants' interest in the Ephraim Herrin estate, but filed their respective final reports without any such claim,

which were approved by court order, the trustees were discharged and the cases closed. They also asserted that the receiver of the First National Bank, a creditor, had knowledge of said will and participated in each bankruptcy proceeding but did not attempt to cause sale of defendants' interest in said estate. They further in their counterclaim contended that the proper construction of said will created either a fee-simple title in Fattima Herrin or a life estate with power of sale with contingent remainders in descendants of the testator surviving her. They also prayed that in event the court should find defendants had such interests in the Ephraim Herrin estate as passed to their respective trustees in bankruptcy, an order be entered finding and adjudging that plaintiff's interest in said estate was only to the extent of the value of such interest at the time the petitions in bankruptcy were filed.

The cause was submitted to the chancellor upon these pleadings and a stipulation as to what the testimony of three witnesses would be. The competency of such testimony was questioned by plaintiffs. The chancellor found that appellees were not motivated by fraudulent desire or intent to conceal such interest from creditors in failing to list such interest as an asset, and entered a decree construing the will as creating a life estate in Fattima Herrin, with contingent remainder to such of testator's descendants as survive the widow.

The decree further found that defendants took no such interest in said estate during the life of the widow as could by any means have been transferred or be levied upon and sold under judicial process against them, and that no interest of any kind or character in the estate of Ephraim Herrin passed to the respective trustees in bankruptcy. The decree also held that the original trustees and creditors of the bankrupts, with full knowledge of the will, elected to and did abandon all right, title, interest or claim as trustees or creditors and that such election is binding

on· the plaintiffs, successor trustees, and on the creditors, and that Classen, as assignee of the claim of the bank, is also bound.

Of their twenty-five assignments of error appellants urge but two: first, the trial court erred in construing said will as passing to appellees a contingent remainder, and second, appellees each had an interest in the property of which Ephraim Herrin died seized, which passed to their respective trustees in bankruptcy. They insist that the rule of construction, many times stated by this and other courts, that it is not the policy of the law to favor the abeyance of estates, is applicable here, and in the construction of this rule the estates created by the testator's will vested upon the death of the testator, unless clear words are found in the will evincing that it was the manifest intention of the testator that the estate should not vest except upon the happening of a certain contingency. This is a rule frequently announced by this court. (*Knight* v *Pottgieser*, 176 Ill. 368; *Grimmer* v. *Friederich*, 164 Ill. 245; *Allen* v. *McFarland*, 150 Ill. 455; *Carper* v. *Crowl*, 149 Ill. 465.) Although it is asserted that Fattima Herrin took the fee, it is clear that she took a life estate with power to dispose of any part or all thereof as she might desire. Only such part of the estate as remained at her death passed to the remaindermen. The primary rule of construction is to arrive at the intention of the testator, and when that intention is determined, to construe the will in accordance with the expressed intention, if the same can be done without violating a rule of law. (*Condee* v. *Trout*, 379 Ill. 89.) The application of this rule renders decided cases of little value, since the language of the instrument is seldom identical.

Considering the intent of the testator, it seems clear that he intended to give his entire estate, after the payment of his debts, to his wife for her use as she saw fit. His language that the devise was for certain uses does not

militate against that construction since the uses had to do with the support of herself and family. Upon her death the testator's son John, coexecutor under the will, became surviving trustee to dispose of the remaining property, if any, and divide the proceeds among "my surviving descendants." The trust created for that purpose was vested in John, surviving executor, as trustee. The trust estate thus created could not be terminated until the trustee had made distribution to the legatees entitled thereto. (*Potter* v. *Couch,* 141 U. S. 296, 35 L. ed. 721; *Kirkland* v. *Cox,* 94 Ill. 400.) It was not known what part, if any, of the estate the surviving descendants would take until it was determined, first, whether any of the estate remained, and second, who and how many were surviving descendants. No legal title in any specific part of the estate and no right of possession thereof vested in any of them until the trustee had converted the trust estate into money under the third clause of the will. (*Potter* v. *Couch,* 141 U. S. 296, 35 L. ed. 721.) No disposition is made of the corpus of the trust until it is converted into money, after the death of the testator's widow, then it is to be divided among the surviving descendants of the testator.

Appellants' counsel argue that "surviving descendants" refers to descendants of the testator surviving him and not such as survive the life tenant, and since the law favors the earliest possible vesting of estates and that construction aids the vesting of these remainders upon the death of the testator, such a construction should be adopted. The rule referred to is to be applied unless the language of the will shows an intent on the part of the testator forbidding its application.

It seems clear from the will that the testator intended to give to his widow the use for life of all his property, and so much of the property itself as she saw fit to dispose of, and that remaining at her death,—and only that—

to his surviving descendants. The remainder was to his descendants. It seems clear that he intended the gift to go only to his descendants. If the remainder after the life estate be considered as vested in those who were his surviving descendants at his death, then on the death of a descendant during the lifetime of the widow a portion of the gift to him might vest in others not descendants of the testator, and thus his intention that it ultimately vest in his descendants be thwarted. A gift to survivors, which is preceded by a particular estate at the expiration of which the gift is to take effect in possession, will take effect in favor of those, only, who survive the particular estate. Such a remainder is necessarily contingent since it cannot be known until the death of the life tenant who of the testator's surviving descendants will survive her to take the estate. (*Potter* v. *Potter*, 306 Ill. 37; *Bender* v. *Bender*, 292 Ill. 358; *Burlet* v. *Burlet*, 246 Ill. 563; *Schuknecht* v. *Schultz*, 212 Ill. 43; *Blatchford* v. *Newberry*, 99 Ill. 11; *Ridgeway* v. *Underwood*, 67 Ill. 419.) It is clear that the testator, by the use of the words "surviving descendants," had in contemplation the possible distribution of the remainder of his estate, after the termination of the life estate, to others than his children living at his death. Any other construction would render the use of the words "surviving descendants" without meaning and useless. If it was the intention of the testator to vest the remainder of his estate subject to the life estate in his children, the use of the words "surviving descendants" would be meaningless. Children are *eo nominee* descendants, but it by no means follows that descendants are necessarily children. When used in a will, "descendants" means only lineal heirs,—those in the direct descending line from the person named,—unless there is a clear indication of intention to enlarge its meaning. "Descendants" is good as a term of description in a will and includes all who proceed from the body of the person named to

the remotest degree. This is the ordinary meaning applied not only by the profession but by the laity to the word "descendants." (*Bates* v. *Gillett,* 132 Ill. 287.) The word "surviving" is a part of the description of those who are to take. This marks a distinction between this case and those cited by appellants. "Surviving" is a word of survivorship which describes the gift and the donees and precludes the vesting of the gift until it can be determined who such donees are. *Campbell* v. *Campbell,* 380 Ill. 22; *Riddle* v. *Killian,* 366 Ill. 294; *Ducker* v. *Burnham,* 146 Ill. 9; Gray's Rule Against Perpetuities, 108.

Counsel for appellants argue that the language in the third clause directing that his surviving descendants take as by the laws of descent indicates an intention to vest the remainder as of the time of his death. With this we cannot agree. We think that such language indicates the quantum of the estate to go to such descendants rather than those who shall take. Here the only gift to remaindermen is to be found in the direction to pay or distribute at a future time. Such a legacy is contingent upon the legatee surviving the date of payment. (*Thomas* v. *Pullman Trust & Savings Bank,* 371 Ill. 577, and cases there cited; Kales on Future Interests, sec. 500.) Counsel cite in opposition to the application of this rule, *McComb* v. *Morford,* 283 Ill. 584, but it will be noted that in that case the testator's direction was that the property was to be sold and the proceeds divided among certain named legatees. No element of survivorship was contained in the description of those to take. That case also holds that where there are no words of devise except a simple direction to distribute at a specified time, and it cannot be known until that time who will answer the description of the class to whom the gift is made, the interest is contingent until that time arrives. Such is the case before us. It seems clear that the manifest intention of the testator was that what remained of his estate at

the death of his wife should not pass out of the direct descending line until it vested in interest. By no means could such intention be carried out if the remainder be held vested on his death, and the whole will indicates such an intention.

This brings us to the question whether appellees, at the time they filed their respective petitions in bankruptcy, had an interest in the estate of their father which passed to their respective trustees in bankruptcy. The rule in this State is that a contingent remainder is not an estate but is merely a chance of having one. It cannot be the subject of sale. It cannot be levied upon by legal process and cannot be conveyed voluntarily by deed, though a warranty deed may transfer the title by way of estoppel, or recovery may be had on contract where an assignment has been attempted, after the happening of the contingency, and it may be released to the reversioner. (*Kenwood Trust and Savings Bank* v. *Palmer,* 285 Ill. 552; *Hill* v. *Hill,* 264 Ill. 219; *Golladay* v. *Knock,* 235 Ill. 412; *Williams* v. *Esten,* 179 Ill. 267; *Ducker* v. *Burnham,* 146 Ill. 9; *Haward* v. *Peavey,* 128 Ill. 430.) A court of equity has no jurisdiction to order the sale of a mere contingent remainder. (*Kenwood Trust and Savings Bank* v. *Palmer,* 285 Ill. 552; *Hill* v. *Hill,* 264 Ill. 219; *Furnish* v. *Rogers,* 154 Ill. 569.) It follows that appellees' interest in their father's estate at the respective dates when they filed their petitions in bankruptcy, were contingent remainders which were not "any property or thing in action" to be discovered in the hands of appellants or any other person.

Finding no error in the record, the decree of the circuit court is affirmed.

*Decree affirmed.*