**Eva S. Baker, Plaintiff-Appellant, v. Thomas Arthur Bates, et al., Defendants-Appellees.**

**Gen. No. 66–29.**

Fifth District.

October 25, 1966.

Listeman, Bandy & Hamilton, of East St. Louis, and Clarence A. Weindel, of St. Louis, Missouri, for appellant.

Wagner, Conner, Ferguson, Bertrand and Baker, of East St. Louis (John M. Ferguson, of counsel), for appellees.

EBERSPACHER, J.

This is an appeal from the decree of the Circuit Court of Monroe County, construing the will of Charlie Murphy, deceased.

Charlie Murphy, a resident of Missouri, died testate in 1920. His last will and testament published March 9, 1920, and a codicil thereto published April 9, 1920, were probated in the State of Missouri and ancillary administration was had in Monroe County, Illinois. Both administrations were completed many years ago.

There is no dispute between the parties as to the facts, the controversy here involves a proper interpretation of Item VII of his last will and testament which provides as follows:

"I give, devise and bequeath to my wife, Minnie W. Murphy, to be held and enjoyed by her for and during the term of her natural life, all of my real estate situated, located and being in the State of Illinois, and I hereby give, devise and bequeath all of said real estate situated, located and being in the State of Illinois, to my said sisters, Minnie Taunt, Grace Light and Pearl Kunz, and my brother, Paul Murphy, subject to the life estate given and devised to my said wife, as above stated, the same to pass to them after the expiration of said life estate, share and share alike. And in the event that any of my said sisters and brother shall die before the expiration of said life estate, leaving no children surviving them, then, and in that event, the share of such as shall be not living upon such expiration, shall pass to and vest in the survivors of my said sisters, Minnie Taunt, Grace Light and Pearl Kunz, and my brother, Paul Murphy, share and share alike. In the event any of my said sisters, Minnie Taunt, Grace Light and Pearl Kunz, and my brother, Paul Murphy, be not living at the date of the termination of said life estate, and shall have left children surviving them, then such children shall be and become vested with the interest or share therein of their respective parents."

At the time of Charlie Murphy's death, he left surviving him his widow, Minnie W. Murphy, and Paul Murphy, Pearl Kunz, Grace Light, and Minnie Taunt, his brother and sisters, as his only heirs at law.

Paul Murphy, mentioned in the will, died in the year 1933, leaving him surviving as his only heirs, his daughters, plaintiffs Paula Killgo and Patricia Helen Murphy.

Minnie Taunt, mentioned therein, died in the year 1935, leaving her surviving as her only heirs at law, plaintiff Eva S. Baker, her daughter, and Thomas Eugene Bates,

32

her son. Thomas Eugene Bates died in 1948, leaving him surviving as his only heirs, defendant Vera Bates, now Vera Raines, his widow, and defendants Thomas Arthur Bates and Patricia Ann Bates, his children.

Pearl Kunz, mentioned therein, died in the year 1947, leaving plaintiff Charles M. Kunz as her only heir.

Grace Light, mentioned therein, died in the year 1951 leaving no children surviving.

Minnie W. Murphy, the life tenant and widow of testator, Charlie Murphy, died on May 26, 1964.

We are here concerned with the last sentence of Item VII of testator's will:

> "In the event any of my said sisters, Minnie Taunt, Grace Light and Pearl Kunz, and my brother, Paul Murphy, be not living at the date of the termination of said life estate, and shall have left children surviving them, then such children shall be and become vested with the interest or share therein of their respective parents."

Minnie Taunt died in 1935 and left Eva S. Baker, her daughter and Thomas Eugene Bates, her son. Thomas Eugene Bates died in 1948 prior to the death of Minnie W. Murphy, the life tenant. Thomas Eugene Bates left him surviving his widow, Vera Bates, now Vera Raines, and two children, Thomas Arthur Bates and Patricia Bates. The question presented is whether or not Eva S. Baker takes a $\frac{1}{3}$ interest in the real estate or does she take a $\frac{1}{6}$ interest and the widow and children of Thomas Eugene Bates each take a $\frac{1}{18}$ interest. The trial court held that Eva S. Baker owned an undivided $\frac{1}{6}$ interest and the widow and children of Thomas Eugene Bates owned an undivided $\frac{1}{18}$ interest.

Contending that Eva S. Baker owned an undivided $\frac{1}{3}$ interest in the premises, appellants have contended that the remainders were contingent and that title only vested in the children of Minnie Taunt that survived the life

tenant. Appellees contend that the remainder vested in the brothers and sisters, upon the death of the testator, subject to being divested in the event any one of them died, during the life of the life tenant leaving no children surviving them; and that Minnie Taunt was vested with what is known as a determinable fee, sometimes known as a shifting executory devise, and that the condition of divestiture was defeated upon her death by her leaving children surviving her; and since she, at her death owned an estate of inheritance (vested remainder, which had been subject to divestiture, but not divested since children survived her), Eva S. Baker and Thomas E. Bates, her children, took the interest of their mother, subject of course, to the life estate, and upon the death of Thomas E. Bates, his share of the vested remainder passed to his widow and children, since it was an estate of inheritance.

Appellants contend that their interpretation is supported by Friedman v. Friedman, 283 Ill 383, 119 NE 321; Roper v. Finney, 7 Ill2d 487, 131 NE2d 106; Smith v. Chester, 272 Ill 428, 112 NE 325; Johnston v. Herrin, 383 Ill 598, 50 NE2d 720, and Raritan State Bank v. Huston, 329 Ill 604, 161 NE 141. An examination of each of those authorities disclosed that without exception, those authorities, in each instance, deal with wills (and in one instance a deed) containing language imposing with respect to the remainder interest, a condition that the remaindermen survive the life tenant; in them the court was dealing with survivorship of the life tenant as the condition imposed by the testator; not as in the case at bar the death of a remainderman leaving his living child or children. The only specifically expressed condition in the case at bar was that in the event that one of the named remaindermen should die prior to the life tenant, he or she must have left surviving "them" a child or children.

■■ The paramount rule of testamentary construction is that the intention of the testator as expressed in

his will governs the distribution of his estate, and the intention of the testator, once it has been ascertained will be given effect unless to do so would violate some settled rule of law or would be contrary to public policy. Sloan v. Beatty, 1 Ill2d 581, 116 NE2d 375.

■■ The law in Illinois, as in most other states, favors the vesting of estates at the earliest possible moment. Where a will is capable of two constructions the courts will give an estate of inheritance to the first devisee unless a contrary intention is clearly shown. Johnson v. Boland, 343 Ill 552, 557, 175 NE 794; Boys v. Boys, 328 Ill 47, 51, 159 NE 217; Lachenmyer v. Gehlbach, 266 Ill 11, 107 NE 202; Chapin v. Crow, 147 Ill 219, 35 NE 536; Patton on Titles, § 142, p 489; Carey and Schuyler, Illinois Law of Future Interests, § 291, p 398.

Carey and Schuyler, Illinois Law of Future Interests, § 291, at page 398, says:

> "Today it is accepted as axiomatic that the law favors the vesting of estates and that remainders will be construed to vest at the earliest possible moment. It is conceivable, and in fact very likely, that the root of this rule of construction was the unwillingness of judges to subject remainders to the harsh doctrine of destructibility except when absolutely necessary."

■■ The classic definition of a vested remainder and the distinction between a vested remainder or a contingent remainder has been precisely stated by Professor Gray in Gray, The Rule Against Perpetuities (4th Ed), § 108, p 95, as follows:

> "Whether a remainder is vested or contingent depends upon the language employed. If the conditional element is incorporated into the description of, or into the gift to, the remainderman, then the remainder is contingent; but if, after words giving a vested interest, a clause is added divesting it, the re-

35

mainder is vested. Thus on a devise to A. for life, remainder to his children, but if any child dies in the lifetime of A. his share to go to those who survive, the share of each child is vested, subject to be divested by its death. But on a devise to A. for life, remainder to such of his children as survive him, the remainder is contingent."

Gray's classic exposition has been frequently quoted and approved by the Illinois court. Smith v. Chester, 272 Ill 428, 112 NE 325; Lachenmyer v. Gehlbach, 266 Ill 11, 107 NE 202; Brechbeller v. Wilson, 228 Ill 502, 81 NE 1094.

Appellant has suggested that the word "then" as used in the last sentence of Item VII was an adverb of time, referring to the termination of the life estate of Minnie Murphy, and has cited Bergendahl v. Stiers, 8 Ill2d 257, 133 NE2d 280 and Phelps v. Seeley, 3 Ill2d 210, 119 NE2d 923. While in both those cases the court interpreted the word "then" as an adverb of time, rather than reference to an event, we believe the language interpreted in both those cases is clearly distinguishable from the language with which we are here confronted. In the Bergendahl case the word "then" was used in the same phrase as were the words "at her death" and it was to that fact that the court determined the testator's intention to use the word "then" as an adverb of time. In the Phelps case the word "then" was used in the same clause as the word "immediately" and the phrase "and if either one should die before coming into possession" found in the same sentence, referred directly to the words "immediately divided" and showed that the testator was providing for a contingency in the same sentence in which he was devising the remainder. Under such language the court felt the word "then" was a clear reference to time.

Applying Professor Gray's distinction to the language of Item VII of Charlie Murphy's will in the case at bar,

it is readily apparent that unconditional devises of both the remainder interest and the life estate were first made by the testator. Thereafter, and by separate sentence he imposed the condition which might cause divestiture of the remaindermen's interest. Thus, there can be no doubt under Professor Gray's definition that the remainder interests here involved were vested immediately upon the death of the testator and constitutes estates of inheritance.

In Stombaugh v. Morey, 388 Ill 392, 58 NE2d 545, the will devised a life estate to testator's widow and the remainder was devised under the following provision:

> "At her (Mary Carr's) death, it is my will that said farm lands be the property in fee of my daughter Millie Stombaugh and my son J. Arthur Carr and should either of them precede my wife in death his or her share shall go to their bodily heirs and if leaving no bodily heirs in that event to the survivor of them."

There was no dispute as to the one-half interest of Millie Stombaugh, one of the testator's children, the litigation involved a dispute between the son of the testator, J. Arthur Carr, and the purchaser at an execution sale of all of his interests. The testator died in 1919. The execution sale was on December 14, 1935. The life tenant died in 1942. With respect to the interest in the real estate owned by the remainderman at the time of the execution sale of all of his interests, the court said, at page 398:

> "The will of Edward F. Carr devised a life estate in the lands in question to Mary Carr and appellee was devised an undivided one-half in the remainder in fee subject to be divested if he should die within the lifetime of the life tenant. If he did die within such time, such undivided one-half then passed by executory devise. Appellee had a base or deter-

37

minable fee. (Citing cases.) It was a vested estate and subject to execution and sale by his judgment creditors. The rights acquired by such a sale would be lost if the event which defeated the fee should occur."

On the basis of the foregoing language and the fact that the execution debtor owned an estate of inheritance (vested subject to divestiture) the court held that the purchaser at the execution sale acquired the interest of that remainderman in the real estate and reversed and remanded the decree of the Trial Court. While in that case, as appears from the last sentence quoted, the purchaser could be divested by a failure of the condition, in the present case, the condition of leaving children surviving Minnie Taunt had been fulfilled.

Item VII of the testator's will can properly be divided into the three separate sentences utilized by the testator in expressing his desires. By the first sentence, there is no dispute that testator devised the real estate to his three sisters and brother subject to the life estate which he devised to his wife.

By the second sentence, the testator provided for the possibility that one of his sisters or brother might die before the expiration of the life estate and leave no children surviving him, in which event that remainderman's interest was to pass in equal shares to the "survivors" of said sisters and brother. The word "survivors" as used in that sentence can only refer to survivorship among the sisters and the brother. There is no language indicating that the testator intended that the word "survivors" as thus used meant survivorship of the life tenant. Indeed, if it were otherwise, all the remainder interests would have failed because none of the named remaindermen survived the life tenant.

By the third sentence of Item VII of the will, the testator provided for the opposite contingency, that is the

death of any of the sisters and brother prior to the termination of the life estate leaving children surviving "them," in which event such children would become vested with the interest or share of their respective parent. By the use of the words "and shall have left children surviving them," it cannot be contended that the testator meant that the children should survive the life tenant. It refers to "them," obviously meaning the remainderman-parent.

The devise of the remainder interest by the testator, Charlie Murphy, was not conditioned upon or did not require that the testator's sisters or brother survive the life tenant. In fact, the testator anticipated that one or more of his sisters or brother might not survive the life tenant. He, therefore, provided for that contingency. The only requirement or condition that he imposed upon the remainder interest was that if one of the sisters or the brother did not survive the life tenant, they must have left children surviving "them." He did not say that they must leave children surviving the life tenant; he said that in the event any of such sisters or brother did not survive the life tenant, they must have left children surviving "them," that is, surviving the parent who might be deceased upon the death of the life tenant.

Two of the testator's sisters and his brother fulfilled the requirement or condition imposed by Item VII of the will. They died and left children surviving "them." True, all of the children did not survive the life tenant, but this is irrelevant when there has been a complete vesting, with all conditions fulfilled. Upon the fulfillment of all conditions, which in this case was the death with surviving children, the remainder interest became fully, completely and unconditionally vested. The only remainder interest that was defeated by broken conditions was the interest of Grace Light who did not survive the life tenant and who did not leave children surviving her.

To construe Item VII, as requiring that the children of the specified remaindermen must have survived the life

tenant, would be directly contrary to the express terms of Item VII of the will, specifically the last sentence thereof where the testator provided that in the event any of his sisters or brother be not living at the date of the termination of the life estate and shall have left children surviving "them," then such children shall be and become vested with the interest or share of the parent. If the testator had intended the construction or effect proposed by plaintiff Eva S. Baker, he would have said "and shall have left children surviving the life tenant," instead of "and shall have left children surviving them."

█ Following settled rules of law we must hold that there was a vested remainder in the real estate in testator's sister Minnie Taunt, and that Thomas Eugene Bates became vested with an estate of inheritance when he survived his mother Minnie Taunt, and upon his death his remainder interest passed to his widow and children.

Accordingly the judgment of the Circuit Court of Monroe County is affirmed.

GOLDENHERSH and MORAN, JJ., concur.