## THOMAS C. KIRKLAND

*v.*

## GEORGE T. COX *et al.*

1. EJECTMENT—*plaintiff must have legal title.* As the naked legal title must control in ejectment, it is sufficient to defeat the action to show that the legal title is not in the plaintiff.

2. USES AND TRUSTS —*presumption as to estate taken by trustee.* A trustee must be presumed· to take an estate only commensurate with the charges or duties imposed on him, but this is subject to the qualification that such presumption shall be consistent with the intention of the party creating the trust, as manifested by the words employed in the instrument by which it is created.

3. SAME—*when statute of uses executes the trust.* Under the statute of uses in force in this State, where an estate is conveyed to one person for the use of or upon a trust for another, and nothing more is said, the statute immediately. transfers the legal estate to the use, and no trust is created, although express words of trust are used. But this has reference only to passive, simple or dry trusts. In such case the legal estate never vests in the feoffee, but is instantaneously transferred to the *cestui que use* as soon as the use is declared.

4. SAME—*exceptions to operation of statute of uses.* The courts of both law and equity hold that there are three classes of cases in which the statute of

Syllabus.

uses does not execute the use, and when the use remains as it did before the statute, a mere equitable interest, to be administered only in a court of equity, viz: 1, where a use is limited upon a use; 2, where a copyhold or leasehold estate or personal property is limited to uses; and 3, where such powers or duties are imposed with the estate upon a donee to uses so that it is necessary that he should continue to hold the legal title in order to perform his duty or execute the power.

5. If any agency, duty or power be imposed on the trustee, as, by way of limitation to a trustee and his heirs to pay the rents, or to convey the estate, or if any control is to be exercised or duty performed by the trustee in applying the rents to a person's maintenance, or in making repairs, or to preserve contingent remainders, or to raise a sum of money, or to dispose of the estate by sale, in all these, and other like cases, the operation of the statute of uses is excluded, and the trusts or uses remain mere equitable estates. So, if the trustee is to exercise any discretion in the management of the estate, in the investment of the proceeds or the principal, or in the application of the income, or if the purpose of the trust is to protect the estate for a given time, or until the death of some one, etc.

6. SAME—*former decisions.* In *Harris* v. *Cornell,* 80 Ill. 67, the remark (referring to the case of *Hardin* v. *Osborn,*) that it had been held that where the purposes of a trust had been accomplished, the owner of the trust became by operation of law reinvested with the legal title and could sue in ejectment, was unadvisedly made, as the opinion in that case was withdrawn on a rehearing granted. In *McNab* v. *Young et al.* 81 Ill. 11, language of like import was used ,upon the authority of the same case.

7. SAME—*how party may be reinvested with legal title in trustee.* Where the legal title to land is vested in a trustee, nothing short of a reconveyance can place the legal title back in the grantor or his heirs, subject of course to the qualification that under certain circumstances such reconveyance will be presumed without direct proof of the fact.

8. SAME—*devise to trustee—what estate passes.* A devise of an estate, real and personal, after the payment of debts, etc., to trustees, with power "to make such disposal of the estate as shall," in the judgment of the trustees, "benefit and increase the value of said estate," and imposing the duty of paying to the testator's daughter "such installments of money as in the judgment of said trustees shall be proper, and sufficient to meet her current expenses and provide an ample and comfortable support," necessarily implies the power to sell the lands of the testator and convert them into money or interest bearing securities, and the power implied to sell is to sell the whole title, and to this is essential the power to convey that title, requiring as a condition precedent a fee simple estate in the trustees.

9. If land is devised to trustees without the word "*heirs,*" and a trust is declared which can not be fully executed but by the trustees taking an in-

heritance, the court will enlarge or extend their estate into a fee simple to enable them to carry out the intention of the donor. Thus, if land is devised to trustees without the word heirs, in trust to sell, even in their discretion, they must have the fee, otherwise they can not sell and convey, and the construction will be the same if the trust is to sell the whole or a part, and a trust to convey or lease at discretion will be subject to the same rule.

10.   A testator used the following language: "*As to my worldly estate, all the real, personal and mixed estate of which I shall die seized,*" . "I hereby grant, devise and convey and confirm unto" three trustees named, "in trust," etc., and then directed the trustees to assume and take entire control of his estate, collect debts, rents, etc., and to govern and control such interests as might accrue and arise to the estate from time to time, and make such disposal of the same as should, in their judgment, increase and benefit said estate, and pay his daughter such installments as they should deem proper, and sufficient to meet her current expenses and provide her an ample support, and should transfer his estate to his daughter upon her becoming thirty-five years of age, if then unmarried, but if married, then only upon a certain contingency, etc., and in the event of her death without issue, to pay certain specified legacies, and then directing that the balance of his estate be divided equally between three charitable corporations: *Held,* that this gave the trustees the entire control and management of the estate until the daughter arrived at the age named, she being unmarried, and if she died before that age without issue, the control and management of the estate continued to devolve upon them, and that they took the title in fee for the purposes of the trust.

11.   SAME—*whether jointly or in severalty.* Where a testator devised all his estate remaining after the payment of his debts and funeral expenses, to trustees, in trust for his daughter, to be held and managed by them until she should marry or arrive at the age of thirty-five years, and providing, in the event his daughter should die without issue, certain legacies should be paid, and the balance to be equally divided between the House of the Good Shepherd, in St. Louis, Mo., St. Joseph Male Orphan Asylum, and St. Ann's Infant Asylum, both of Washington City, it was held that the grant to the three corporations was in severalty and not as tenants in common, and that on the death of the daughter without issue it was intended to make it the duty of the trustees to make an equal division of the property between these corporations.

APPEAL from the Circuit Court of Montgomery county; the Hon. CHARLES S. ZANE, Judge, presiding.

This was an action of ejectment by appellees, claiming as heirs at law of Michael Walsh, deceased, against appellants, claiming as trustees of his estate, to recover possession of cer-

tain lands lying in Montgomery county. The case was tried by the court without the intervention of a jury, and judgment was rendered in favor of appellees, to reverse which this appeal is prosecuted.

The material facts were agreed to by the counsel of the respective parties and embodied in a stipulation in writing, which they signed, and which is incorporated into the record. By this it is shown that said Michael Walsh died on the 23d day of September, 1867, leaving him surviving no widow, but his daughter, Mary L. Walsh, his only child and heir at law; that said Mary L. Walsh died on the 18th day of July, 1875, being then under the age of thirty-five years, leaving appellees her next of kin and heirs at law; that said Michael Walsh was seized in fee simple of the lands in controversy at the time of his death; that said Michael Walsh left a last will and testament, which has been duly probated, in which he makes, among others, the following devises and bequests:

"As to my worldly estate, all the real, singular, personal and mixed, of which I shall die seized and possessed, or to which I may be entitled after my decease, after the payment of all just debts, demands and funeral charges, I hereby grant, devise, convey and confirm unto Horatio M. Vandeveer, of Taylorville, Christian county, Illinois, and Charles T. Hodges, of Walshville, Montgomery county, Illinois, and Andrew Sproule, of Saint Louis, Missouri, reposing in each of said persons full trust and confidence: *in trust, however,* for the following purposes:

"*First.* I desire and direct my said trustees to assume and take entire control of my said estate during the term or terms and under the conditions hereinafter expressed, to collect all outstanding dues, rents, profits and interests of whatever character, derived therefrom, and to govern and control all such interests as may accrue and arise to said estate, from time to time, and to make such disposal of said estate as shall in their judgment benefit and increase the value of said estate; and especially do I design and direct Charles T. Hodges, one

of my said trustees, to sell all the real estate belonging to me and situated in the town of Pana, Christian county, Illinois, in the town of Stanton, Macoupin county, Illinois, and in the towns of Litchfield, Hillsboro and Walshville, Montgomery county, Illinois. * * * * * * *

"*Second.* I desire and direct that said trustees shall pay, or cause to be paid, out of said estate, to my beloved daughter and only child, Mary Lucy Walsh, such installments of money as in the judgment of my said trustees shall be deemed proper and sufficient to meet her current expenses, and provide her an ample and comfortable support.

"*Third.* When my said daughter, Mary Lucy Walsh, shall arrive at the full age of thirty-five years, and is then unmarried, I desire and direct that my said estate shall be transferred to her by my said trustees, and ever thereafter said estate shall vest in her and be under her absolute control.

"*Fourth.* It is, however, provided that if my said daughter should, on or before her thirty-fifth birthday, become married to a person who shall be deemed and considered by my said trustees as a person worthy and competent, and in whom confidence can be reposed, then said trustees shall, so soon as they become satisfied that such person is so worthy, place the whole of said estate under the control of my said daughter, and ever thereafter said estate shall be vested in her name, and under her absolute control forever.

"*Fifth.* In case said daughter shall be, at her thirty-fifth birthday, married to a person whom said trustees shall consider and deem incompetent and unworthy, and not a suitable person who should have any care or control of said estate as husband, then said estate shall continue and remain vested in said trustees in trust; and I desire and direct said trustees to continue to make payments to said daughter, in such amounts and at such times as in their judgment they may think proper, and the circumstances and station of said daughter may demand; and in case of the death of such husband, said estate

shall vest absolutely in and be under the control of said daughter, provided she shall be of the age of thirty-five years.

\* \* \* \* \* \* \* \* \*

"*Seventh.* In case my said daughter shall die without issue, it is my wish and will, and I hope it may meet with her approbation, that the whole of my said estate shall be disposed of as follows, viz:" Then follow certain specified legacies to individuals, amounting, in the aggregate, to $2600, after which is the following: "The balance of my estate, upon the happening of such contingency, viz: the death of my daughter without issue, I wish divided equally between the 'House of the Good Shepherd,' situated in the city of St. Louis, State of Missouri, 'Saint Joseph Male Orphan Asylum,' Washington City, District of Columbia, and 'Saint Ann's Infant Asylum,' of Washington City, District of Columbia."

The will then exempts the trustees from personal liability for losses occurring without their fault, and appoints them also to be executors of the will.

It is also further shown by the stipulation, that Charles T. Hodges, only, qualified and took upon himself the duties, etc., of trustee and executor under the will,—the other parties named declining to act,—and he continued to so act until the 13th day of May, 1876, when he died, and he was thereafter succeeded by appellant, to whom letters of administration *de bonis non*, with the will annexed, were duly issued; that appellant does not claim title to the lands in controversy, but claims to hold possession of and control the same for the benefit of the devisees of said will, and that he refused to deliver up possession of the premises to the plaintiffs when they demanded the same of him before the commencement of this suit, and that he is now, and at the commencement of this suit was, in the actual possession of said premises.

It was admitted that the St. Ann's Infant Asylum, and St. Joseph Male Orphan Asylum, were duly incorporated by acts of Congress, and are located in Washington City, D. C., and that the House of the Good Shepherd was duly incorpo-

rated under the laws of Missouri, and is located in the city of St. Louis, in that State, and, also, that these three devisees are now carrying on the objects for which they were incorporated.

The other facts established on the trial are not deemed of any importance in elucidating the question upon which the case turns in the opinion of the court.

Mr. ALEX. J. P. GARESCHE, and Mr. E. LANE, for the appellant:

If the legal title or fee is in the trustee appointed in the will, the plaintiffs can not maintain this action.

There can be no question that during the life of Mary L. Walsh, the beneficiary under the will, the fee in these premises was in the trustee, and being in him at one time, how and when he became divested of the legal title is the question that must be answered by the plaintiffs.

Washburn on Real Property, vol. 2, page 489, states the law to be, that a trustee can only be divested of his right of possession by a decree of a court of equity. An action of ejectment will not lie against a trustee.

Perry on Trusts says, sec. 228 : " It is the duty of the trustee to defend and protect the title to the trust estate ; and as the legal title is in him, he alone can sue and be sued in a court of law. The *cestui que trust,* the absolute owner of the estate in equity, is regarded in law as a stranger."

In the case of *Richeson* v. *Ryan et al.* 15 Ill. 13, it is held by this court that if the legal title is in a trustee, he alone should recover. See also *Smith* v. *Ramsey,* 1 Gilm. 377 : " If the trustee dies," as did Hodges in this case, "the estate will descend, charged with the trust, to his heir." And in Washburn on Real Property, vol. 2, page 467, it is said : " It should, however, be borne in mind that at common law, upon the death of a trustee, his estate descended, charged with the trust, to his heirs."

Perry on Trusts sums it up in this language, sec. 343: "Therefore, upon the death of one of the original trustees, the whole estate, whether real or personal, devolves upon the survivors, and so on to the last survivor; and upon the death of the last survivor, if he has made no disposition of the estate by will or otherwise, it devolves upon his heirs, if real estate; and upon his executors or administrators, if it is personal estate."

Nor was this trust an *executed* trust.   A trust is said to be *executory* when some further act is necessary to be done by the trustee to give effect to it, and a trust is said to be *executed* when no act is necessary to be done by the trustees to give it effect; but in equity a trust can never be regarded as executed if it would defeat the plain intention of the testator.

Here, the legal estate was transferred to trustees for them to act,—that is, to collect rents, take charge of the estate, and do in general what might to them seem best for the interests of the estate, paying annually the current expenses of Mary L. Walsh, and upon her death without issue to pay certain specific legacies, the balance of the estate to be "divided equally" between the three residuary legatees and devisees.   Some act was to be done, and to be done by the trustee of the estate, and doubly so if there are charities to be administered by the courts through the instrumentality of a trustee.

The rule is the same whether the act to be done is directed by the will or by a court of chancery.   See *Edmonson and wife* v. *Dyson*, 2 Kelly, page 307, where this whole question is fully considered.   The trust can not be considered as executed as long as some act is to be done by the trustee.   What evidence can be found in this record that a single one of these legacies is paid?

"The test of an executory trust is that the trustee has some duty to perform, for the performance of which it is necessary that the title be regarded as abiding in him.   Here nothing could be plainer than that the trustee could not perform the trusts conferred on him without retaining the title of the

property." In the case at bar, how could the trustee perform the trust imposed upon him without retaining the estate? But it may be insisted that he could retain the estate until these special legacies were fully paid, and then, as the foreign corporations could not take at law, this real estate descended to the heirs, divested of the trust. This can not be. The law is well settled that if the estate and legal title is once vested in a trustee for a lawful purpose, all unlawful restraints will fall away and be simply void, leaving the estate well vested in the trustee. See Perry on Trusts, sec. 738: "Again, if there is a valid trust joined with a void one, the legal estate will vest, and the heir or residuary devisee must resort to a *court of equity.*" *Willett* v. *Sandford,* 1 Ves. Sen. 186; 2 Jarman, 207.

The legal title certainly vested in the trustee when he held the estate in trust for Mary L. Walsh, and, in the event of her death, for the other legatees; and having once vested, the only way it can be divested, if the instrument itself does not direct how it is to be divested, is by a bill in chancery or by a conveyance from the trustee.

Mr. JAMES M. TRUITT, and Messrs. RICE & MILLER, for the appellees:

The sole trustee, who acted under the appointment in the will, is dead, and appellant's counsel contend that the legal title is in the heirs-at-law of that trustee, and for that reason the appellees can not recover in this action. We insist the legal title was never in the trustee.

In endeavoring to ascertain just what estate a trustee does take by a devise, we understand the first leading rule to be that "trustees must, in all cases, be presumed to take an estate commensurate with the charges or duties imposed on them." A second rule of equal force is that "trustees must not, in general, be allowed by mere construction or implication to take a greater estate than the nature of the trust demands; for this would disinherit the heir, which is always

as far as possible to be avoided." The Law of Trusts and Trustees, by Tiffany & Bullard, 788, 789.

Hence the estate of trustees would be confined and restricted to such a partial or less extensive interest (than that indicated by the language of the trust) as would be sufficient to carry out the purposes of the trust. Hill on Trustees, 2 Am. ed., sec. 239, and cases cited; the Law of Trusts and Trustees, by Tiffany & Bullard, 1 ed., p. 791, and cases cited.

Therefore, if there be a devise to trustees, without any words of limitation or *a fortiori* to trustees, their executors, administrators and assigns, in trust, out of the rents and profits, to pay debts or legacies, and if, from the amount or nature of the payments to be made, as well as the general scope of the trust, the payments may well be discharged by an annual perception of the profits, and no sale or other anticipation of the income is necessary for that purpose, the authorities, without exception, establish that the trustees will take only a term of years sufficient for raising the required moneys, and no estate of inheritance will vest in them. And the fact of the devise being to the persons who are appointed executors would seem to be in favor of this construction. Hill on Trustees, 2 Am. ed., top p. 349, and cases cited.

A devise to trustees without the addition of any words of limitation, in trust to pay the rents and profits to a person or persons for life, followed by a gift of the estate over, will give the trustees an estate during the life of the *cestui que trust* for life, as we have already seen that a devise to the trustees and their heirs in a similar trust will be cut down into a life estate. And a similar devise to trustees in trust for an individual until of age, or any other specified age, will give them a chattel interest only determinable upon the *cestui que trusts* attaining that age or dying before. Hill on Trustees, 2 Am. ed., top p. 350; *Doe* v. *Nichols*, 1 B. Cr. 336; *Doe* v. *Ewart*, 7 Adol. & El. 336–7; *Shapland* v. *Smith*, 1 Bro. C. C. 75.

Trustees may take only a chattel interest in real estate although limited to them and their heirs, as, where they are

to hold it in trust only for a short time to pay debts and legacies and convey it to the *cestui que trust* when he comes of age, and this construction will be much stronger if the fee is not limited to them. Perry on Trusts (1st ed.) sec. 316.

A trust to preserve contingent remainders without limitation to heirs will not be enlarged, for the trust does not require an estate of inheritance. *Thong* v. *Bedford,* 1 Bro. Ch. 14; *Webster* v. *Cooper,* 14 How. 499; *Beaumont* v. *Salisbury,* 19 Beav. 198; Coke on Lit. 290, b. Butl. n. 8.

Applying these propositions of law to the facts of this case and we conclude that the legal estate in the lands never did vest in the trustee.

But if we concede that the legal estate was in Charles T. Hodges at the time of his death, as claimed by appellant, still we are unable to see how that will help them, because we understand that on the death of Mary Lucy Walsh the statute of uses executed the legal title in the three foreign corporations aforesaid, by virtue of whose right appellant holds possession, if they could take under the will, and if they could not take, then the statute executed the legal title in appellees. In either event the legal title is not now and never has been in the heirs at law of Mr. Hodges. "Thus, where an estate is given to trustees and their heirs, in trust to pay the income to A during her life, and at her decease to hold the same for the use of her children or heirs, or for the use of other persons named, the trust ceases upon the death of A, for the reason that it remains no longer an *active* trust; the statute of uses immediately executes the use in those who are limited to take it after the death of A, and the trustees cease to have anything in the estate, not because the court has abridged their estate to the extent of the trust, but because, having the fee or legal estate, the statute of uses has executed it in the *cestui que trust.*" Perry on Trusts, sec. 320; *Parker* v. *Converse,* 5 Gray, 336; *Greenwood* v. *Coleman,* 34 Ala. 150; *Churchill* v. *Corker,* 25 Ga. 479.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

In this form of action, since the naked legal title must control, we think it sufficient to show that title is not in appellees, and the judgment below can not, therefore, be sustained.

The rule is, undoubtedly, as claimed by appellees' counsel, that trustees must be presumed to take an estate only commensurate with the charges or duties imposed on them; but this, however, is subject to the qualification that such presumption shall be consistent with the intention of the party creating the trust, as manifested by the words employed in the instrument by which it is created. *Doe d. Shelley* v. *Edlin,* 4 Adol. & El. 582–589, (31 Eng. Com. Law, 143); *Doe d. Cadogan* v. *Ewart,* 7 Adol. & El. 636, 666; *Doe d. Davies* v. *Davies,* 1 Adol. & El. N. S. 430, (41 Eng. Com. Law, 611).

Under the statute of uses, which is in force here, where an estate is conveyed to one person for the use of or upon a trust for another, and nothing more is said, the statute immediately transfers the legal estate to the use, and no trust is created, although express words of trust are used. Perry on Trusts, sec. 298. And so we have expressly held. *Witham* v. *Brooner,* 63 Ill. 344; *Lynch et al.* v. *Swayne et al.* 83 id. 336.

But this, it will be observed, has reference only to passive trusts, or what are sometimes termed simple or dry trusts; and in such cases the legal estate never vests in the feoffee for a moment, but is instantaneously transferred to the *cestui que use* as soon as the use is declared. 2 Blackstone's Com. (Sharswood's ed.) 331, 332; and *Witham* v. *Brooner, supra.*

It is said in Perry on Trusts, sec. 300: "Although it is probable that it was the intent of the statute [*i. e.,* of uses] to convert all uses or trusts into legal estates, yet the convenience to the subject of being able to keep the legal title to an estate in one person, while the beneficial interest should

be in another, was too great to be given up altogether, and courts of equity were astute in finding reasons to withdraw a conveyance from the operation of the statute.    Three principal reasons or rules of construction were laid down whereby conveyances were excepted from such operation:  First, where a use was limited upon a use; second, where a copyhold or leasehold estate, or personal property was limited to uses; third, where such powers or duties were imposed with the estate upon a donee to uses that it was necessary that he should continue to hold the legal title in order to perform his duty or execute the power.    In all of these three instances courts, both of law and equity, held that the statute did not execute the use, but that such use remained as it was before the statute, a mere equitable interest to be administered in a court of equity."    And again, in sec. 305, it is said: "The third rule of construction is less technical, and relates to special or active trusts, which were never within the purview of the statute.    Therefore, if any agency, duty or power be imposed on the trustee, as, by a limitation to a trustee and his heirs to pay the rents, or to convey the estate, or if any control is to be exercised or duty performed by the trustee in applying the rents to a person's maintenance, or in making repairs, or to preserve contingent remainders, or to raise a sum of money, or to dispose of the estate by sale, in all these and in other and like cases, the operation of the statute is excluded, and the trusts or uses remain mere equitable estates.    So, if the trustee is to exercise any discretion in the management of the estate, in the investment of the proceeds or the principal, or in the application of the income, or if the purpose of the trust is to protect the estate for a given time, or until the death of some one, or until division."    *    *    *    And again, in regard to enlarging and extending estates given to trustees, the same author, in sec. 315, says: "So, if land is devised to trustees without the word *heirs,* and a trust is declared which can not be fully executed but by the trustees taking an inheritance, the court will enlarge or extend their estate into

a fee simple to enable them to carry out the intention of the donors. Thus, if land is conveyed to trustees without the word *heirs*, in trust to *sell*, they must have the fee, otherwise they could not sell. The construction would be the same if the trust was to sell the whole or a part, for no purchasers would be safe unless they could have the fee, and a trust to convey or to lease at discretion would be subject to the same rule. *A fortiori*, if an estate is limited to trustees and their heirs, in trust to sell or mortgage or to lease at discretion, or if they are to convey the property in fee, or to divide it equally among certain persons, for to do any or all of these acts requires a legal fee." See, also, to the same effect, Hill on Trustees, (4 Am. ed.) 376; *Doe d. Rees* v. *Williams,* 2 Meeson and Welsby (Exch.) 749.

In those cases where the legal fee is not vested in the trustee, it will, of course, in the absence of a devise prevailing to the contrary, vest in the heir at law. And there are also cases in which, it having been the duty of the trustee to convey to the heir at law, it will be presumed, after the lapse of considerable time, that such conveyance has been made. Hill on Trustees (4 Am. ed.) 401; Perry on Trusts, sec. 350; *Gibson* v. *Rees et al.* 50 Ill. 383; *Pollock* v. *Maison,* 41 id. 516. But it is not claimed, nor could it be, that there is any foundation for such presumption in the facts found in this record.

In *Harris* v. *Cornell,* 80 Ill. 67, it was said, referring to *Hardin* v. *Osborn,* Sept. T. 1875, that it had been held the purposes of a trust having been accomplished, the owner of the trust became, by operation of law, reinvested with the legal title and could sue in ejectment. This was unadvisedly said. A rehearing was granted in *Hardin* v. *Osborn,* and the opinion therein referred to was withdrawn. In *McNab* v. *Young et al.* 81 Ill. 11, language of like import as that used in *Harris* v. *Cornell, supra,* was used upon the authority of the same case, although it is therein erroneously referred to

as being reported in 60 Ill. at p. 93. The case there reported, of that name, does not discuss that or any kindred question.

The true doctrine in regard to active trusts, and that adhered to by this court, is expressed in *Vallette* v. *Bennett*, 69 Ill., at p. 636, that where the legal title is vested in the trustee, nothing short of a reconveyance can place the legal title back in the grantor or his heirs, subject, of course, to the qualification that, under certain circumstances, such reconveyance will be presumed without direct proof of the fact.

The language of Walsh's will is: "As to my worldly estate, all the real, personal and mixed, of which I shall die seized and possessed, * * * I hereby grant, devise, convey and confirm unto," (naming the trustees) "in trust," etc. He then directs his said trustees to assume and take entire control of his estate; to collect all outstanding dues, rents, profits and interests of whatever character, derived therefrom, and to govern and control all such interests as may accrue and arise to said estate from time to time; to make such disposal of said estate as shall in their judgment benefit and increase the value of said estate; that said trustees "shall pay, or cause to be paid, out of said estate," to his daughter, Mary Lucy, "such installments of money as in the judgment of said trustees shall be deemed proper and sufficient to meet her current expenses, and provide her an ample and comfortable support;" that said trustees should transfer his estate to his said daughter upon her reaching the age of thirty-five years, she being then unmarried, but if then married, they are directed to transfer the estate to her only upon the contingency that they should deem her husband a person in whom confidence might be placed; but if the trustees should deem the husband an incompetent and unfit person to have the care and control of the estate, they are directed to continue to make payments to his daughter, "in such amounts and at such times as in their judgment they may think proper," and that the circumstances and station of his daughter may demand; that in the event of the death of his daughter without

issue, certain specific legacies, amounting to some $2600 in the aggregate, are given, and the balance of his estate is to be divided equally between the House of the Good Shepherd, Saint Joseph's Male Orphan Asylum, and Saint Ann's Infant Asylum; and he then exempts his trustees from liability for all losses occurring without their fault.

This very clearly gave the entire control and management of the estate to the trustees until Mary Lucy should arrive at the age of thirty-five years—being unmarried;—and she having died before she reached that age, the control and management of the estate continued to devolve upon them. The language employed so plainly conveys this idea, that it can admit of no controversy.

The power "to make such disposal of the estate as shall," in the judgment of the trustees, "benefit and increase the value of said estate,"—as also the duty of paying Mary Lucy "such installments of money as in the judgment of said trustees shall be proper, and sufficient to meet her current expenses and provide an ample and comfortable support"— necessarily imply the power to sell the lands and convert them into money or interest bearing securities; for this might well, in the judgment of the trustees, benefit and increase the estate, and be essential to make payment of the sums directed to be paid to Mary Lucy. The power implied to sell, is to sell the whole title,—and to this is essential the power to convey that title, requiring, as a condition precedent, a fee simple estate in the trustees.

The property is devised to the trustees to sell and convey, if they deem it advisable, or to hold and control until it is to be transferred as directed; and in the contingency that has arisen, it was intended that it should be the duty of the trustees to make the equal division of the property between the corporations designated and convey it accordingly,—for the grant to these corporations is in severalty, and not as tenants in common, and their title must necessarily rest on the conveyance of the trustees.

Whether the corporations can hold or not, is not now material. The words of the devise show the intention of the testator that the trustees should take a fee, whether he was mistaken in the law as respects the objects of his intended bounty or not. The only difference would be, if the corporations can not take, the trustees, instead of holding the legal title in trust for them, hold it in trust for the heirs-at-law. Hill on Trustees, (4 Am. ed.) 208–9.

The legal title, then, being in the trustees, the heirs-at-law could not maintain ejectment. Perry on Trusts, §§ 17, 328, 520; Hill on Trustees, (4 Am. ed.) 422–3, *274; id. 482, *317; id. 672, *428; id. 784, *503; Law of Trusts and Trustees, by Bullard & Tiffany, p. 811.

The judgment of the circuit court is reversed.

*Judgment reversed.*