(No. 27418.—

ROBERT ICKES, Appellant, *vs.* HAROLD L. ICKES, Appellee.

*Opinion filed January 18, 1944—Rehearing denied March 22, 1944.*

OMER POOS, of Hillsboro, HENRY S. BLUM, DANIEL J. HEALY, and EDWARD M. KEATING, all of Chicago, for appellant.

BUTZ, VON AMMON & MARX, (FREDERICK Z. MARX, and RODNEY C. GLOVER, of counsel,) all of Chicago, for appellee.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

This appeal is prosecuted by appellant, Robert Ickes, to review a decree of the superior court of Cook county confirming an award of arbitration involving a construction of the last will and testament of Anna Wilmarth Ickes, deceased wife of appellee, Harold L. Ickes.

Appellant and appellee entered into a written agreement pursuant to the provisions of the Arbitration Act, (Ill. Rev. Stat. 1943, chap. 10,) to submit to arbitration a controversy between them arising out of the construction of said will. Anna Wilmarth Ickes, the testatrix, died August 31, 1935, leaving her last will and testament dated June 24, 1931, which was admitted to probate in the probate court of Cook county on October 8, 1935. The probate proceedings were closed November 25, 1936, and all of the estate of the deceased was ordered turned over to appellee, who has had possession of it since that time.

Appellant Robert Ickes, was a foster son of the testatrix, Anna Wilmarth Ickes, and appellee, her husband, but was no relation by blood or marriage to either of them, nor was he ever legally adopted. The bulk of the estate

left by the testatrix consisted of real property. The testatrix left surviving as her only heirs and next of kin, her husband, Harold L. Ickes, Raymond Ickes, son of the testatrix and Harold L. Ickes, Wilmarth Ickes and Francis Bryant, who were the son and daughter of testatrix, respectively, by a former marriage. The estate left by the deceased was valued at approximately $800,000. The material clauses of the will, and the substance of the other clauses will be set forth for a complete determination of the question presented.

By the first clause of the will testatrix directed that her debts and funeral expenses be paid. By the second clause she bequeathed to four individuals, specific sums, aggregating $11,000, conditioned that they had not taken under the will of her husband, Harold L. Ickes. The first paragraph of the third clause and subparagraphs (a) and (b) of said third clause read:

"THIRD: All of the rest and residue of whatever property I may own or in which I may have any interest at the time of my death, of whatever sort, real, personal or mixed, in possession or in expectancy, wherever it may be situated, I give, bequeath and devise to JAMES B. BLAKE, of the City of Milwaukee, State of Wisconsin, and to JOHN P. OLESON, of the Village of Kenilworth, County of Cook and State of Illinois, AS TRUSTEES, to hold upon the following trusts, that is to say:

(a) If my husband, HAROLD L. ICKES, shall be living at the end of ten days following the day of my death, I direct the said Trustees to convey, make over and deliver to him, in the forms in which it may then be invested, without restriction of any sort, all my property, of whatever sort, real, personal or mixed, in possession or in expectancy and wherever it may be situated, in which event all right, title and interest in or to my estate on the part of the said Trustees shall terminate and cease.

(b) If my said husband, HAROLD L. ICKES, should not be living at the end of ten days following the day of my death, then the said Trustees shall hold the trust estate subject to the trusts hereinafter set forth."

Paragraph (c) of said third clause provides that said trustees shall pay to the servants of the testatrix such sums

as she might indicate in writing, and if she left no such writing then any sum not exceeding $2500 in the aggregate for all, as the trustees might think just and proper, considering their needs, length of service and faithfulness. These payments were left to the sole discretion of the trustees, if she failed to leave directions in writing, which she intended to do. Paragraph (d) directed the trustees to make over and apportion to her surviving children all her household articles, personal ornaments, books, furniture, and automobiles, share and share alike, without restriction of any sort, the judgment of the trustees in making the apportionment to be conclusive and binding on the children.

Paragraph (e) provided as follows:

"(e) The provisions of this sub-paragraph (e) are herein for convenience referred to as Trust "A." The Trustees shall pay from the net income of the trust estate, commencing from the date of my death, such sum or sums as they may deem advisable for the maintenance, support and education of ROBERT ICKES, and my wish is that he shall, in general, be maintained and educated on the same basis as my son, RAYMOND ICKES."

It was further provided in this paragraph that the trustees should make payments to Robert Ickes from time to time for his education and upkeep and he was given the right therein to dispose of by will, a sum out of the estate in trust, not to exceed two hundred thousand dollars.

Paragraph (f) gave directions to the trustees to make certain payments and distribution to the adopted daughter, Frances Bryant, which are not material here. Provision for payments out of the net income and final distribution to Wilmarth Ickes was made in paragraph (g). The provisions of that paragraph, like those of paragraph (f) are not material here, except in so far as the directions in both were to "The Trustees."

Paragraph (h) directed the trustees to hold and pay to Raymond Ickes, one third of the net income of the trust

estate, with certain restrictions as to amounts and periods of distribution. All of the payments and distributions to be made to Wilmarth and Raymond Ickes, and Frances Bryant, were made subject to the payments and distributions to be made by the trustees to Robert Ickes.

Paragraph (i) provides that if, at the end of ten days following the day of the death of the testatrix, neither her husband nor any of the beneficiaries designated to share in the trust should be living, then the trustees should pay and deliver "all of the trust estate" to Jane Addams, as trustee, in furtherance of her social and philanthropic work.

Paragraph (j) conferred upon the trustees full power to hold, manage, control, sell, mortgage, pledge, hypothecate, and convey the property of the trust, to make leases, grant easements, enter into drainage or irrigation district agreements, subdivide and vacate subdivisions; and to make any investments or reinvestments of any or all the property, giving to the trustees the same latitude in dealing with the property as she would have if living, and subject only to such restrictions and limitations as were imposed on them by the will.

Paragraph (k) empowered the trustees, if they were of the opinion that administration would be facilitated by so doing, to segregate sufficient assets of the estate and create a separate trust to assure the interest created for Robert Ickes under Trust "A," or to impress a trust upon particular assets of the estate for his protection.

Paragraph (l) and (m) made provision for payment either directly to any minor entitled to payment or distribution, or to their duly appointed guardian, and included restraints against assignments by any beneficiary or the subjection of any interest to the claims of creditors of the beneficiaries.

The fifth and eighth clauses of the will read as follows:

"FIFTH: If I shall leave any property or interest therein, of whatever sort or wherever situated, in possession or in expectancy,

undisposed of under the preceding paragraphs of this Will; or, if any devise or bequest should lapse, be renounced, or for any reason should fail to take effect, then, in any such event, I give, bequeath and devise all such property, of whatever sort, real, personal or mixed, in possession or in expectancy, wherever it may be situated, to my said husband, Harold L. Ickes, without restriction of any sort. Or, if my said husband should not be alive to inherit, then and in that event, I give, bequeath and devise all the said property to my children, share and share alike, without restriction of any sort, the descendants of any deceased child or children to take their deceased parent's share by way of representation."

"EIGHTH: I nominate and appoint my said husband, HAROLD L. ICKES, to be the guardian of the estate of my said son, Raymond Ickes (as by law he will be the guardian of the person of son, Raymond,) and of the estate of any other minor beneficiary who may survive me. If, however, my said husband, Harold L. Ickes, should die during the minority of any such beneficiary, then I nominate and appoint my said son, WILMARTH ICKES, and the said JOHN P. OLESON, or the survivor of them, to be the guardians or guardian of the respective estates of any such minor beneficiary. And I direct that my said husband, Harold L. Ickes, the said Wilmarth Ickes, or the said John P. Oleson, as guardian of any minor beneficiary, be not required to give other than his individual, personal bond, without surety."

By the arbitration agreement heretofore referred to, Ulysses S. Schwartz was first designated as arbitrator but later Judges John M. O'Connor, William H. McSurely and David F. Matchett, judges of the Appellate Court for the First District, were substituted as arbitrators and the matter was submitted on three questions: (1) whether by reason of any trust provision in said will or any contractual obligation owed by Harold L. Ickes to Robert Ickes to carry out all or any of the provisions of the will, or any acquisition of, or succession to, any property of the testatrix by Harold L. Ickes under her will, Robert Ickes now has a valid and enforcible claim at law or in equity against the said Harold L. Ickes personally or against any of the property he has received under the will; (2) if the answer is "yes," what is the precise nature and extent of that claim; and, (3) if the precise nature and extent of

the claim is fixed and determined, the arbitrators shall include in the award specific findings as to the time or times and the amount of payments required to be made by Harold L. Ickes to Robert Ickes and such other terms and conditions governing said payments. The controversy between appellant and appellee, as expressed in the arbitration agreement, is whether Harold L. Ickes took the property of the testatrix subject to a trust in favor of appellant or, in the alternative, is appellee under contractual obligation to carry out the provisions of subparagraph (e) of the third clause of the will intended for appellant's benefit. It is apparent from the argument of opposing counsel that all issues except one are abandoned. Appellant's counsel, in the reply brief states: "The sole issue in this case is whether the testatrix intended to name the appellee as Successor Trustee of the trusts created in and by her will if he survived her by ten days, or whether she intended that he should in such event succeed to the entire title to the residue of the estate." We must limit our consideration to that sole issue. That requires a construction of the will.

Opposing counsel argue with equal fervor, and each with a citation of numerous authorities, that the purpose of construing a will is to give it the meaning and interpretation which the testatrix intended, and her intention, as ascertained from a consideration of the entire will, must be carried out if it can be done without violating some established rule of law or public policy. This general rule is too well recognized to require citations to support it, but our very latest pronouncements demonstrate a present adherence to that rule. *Riddle* v. *Killian,* 366 Ill. 294; *Johnston* v. *Herrin,* 383 Ill. 598, and cases cited therein.

Appellee's counsel insist that the intention of the testatrix is so clearly expressed in paragraphs (a) and (b) of the third clause of the will that the court must uphold

it without regard to any result reached by rules of construction applying to specific provisions of the will. They contend that the direction to the trustees to convey the property devised to them to Harold L. Ickes, "without restriction of any sort," clearly manifests an intent that he shall take an absolute title, and that paragraph (b) of said clause emphasizes that intent by providing that if the said Harold L. Ickes should not be living at the end of ten days following the date of the death of the testatrix, *then* "the trustees shall hold the trust estate subject to the trusts hereinafter set forth."

Appellant's counsel assert that since the entire will must be considered in arriving at the intent of the testatrix, certain other provisions of the will clearly show that the testatrix intended that if her husband, appellee, survived her for ten days the trustees should convey the property to him as successor trustee, subject to the same trusts imposed upon them by the will. It is insisted that the entire will demonstrates a deep solicitude for appellant, her foster son, in that she provided for him first and created trusts for the other children subject to that created for appellant; that the entire scheme of the will was that her estate was to go in the channels she directed; and that the trustees were to convey to Harold L. Ickes, if he survived her for ten days, as successor trustee, conveying to him only such title as the trustees themselves had to the property of the estate.

We must accept the conclusion that the trustees named in the first paragraph of the third clause of the will, were devised a title in fee to the property. The trust created by the will was an active trust, requiring the performance of certain duties with respect to the property, which could only be performed by one clothed with the legal title. (*Emmerson* v. *Merritt*, 249 Ill. 538; *Craig* v. *Kimsey*, 370 Ill. 321.) By the will now under consideration the testatrix, after making certain specific bequests, bequeathed and* devised to James P. Blake and John P. Oleson, as trustees,

all the rest and residue of her property. Active duties were imposed upon them and whatever estate was necessary to accomplish the purpose of the trust was acquired by those trustees. (*Lawrence* v. *Lawrence,* 181 Ill. 248; *McFall* v. *Kirkpatrick,* 236 Ill. 281.) They were empowered to sell, mortgage, pledge, hypothecate, convey, subdivide, grant easements, enter into agreements bringing the lands into drainage and irrigation districts, to invest and reinvest and to have the same latitude in dealing with the property as the testatrix would have if living. These powers could not be exercised by the acquisition of any estate less than a fee. The fee was therefore necessarily devised to them. (*Kirkland* v. *Cox,* 94 Ill. 400; *Lawrence* v. *Lawrence,* 181 Ill. 248.) If they conveyed to appellee the estate devised to them, he acquired a title in fee. The argument is not persuasive that the will in question must be construed in accordance with the rule that the estates devised to the designated legatees in the trusts must become vested immediately upon the death of the testatrix because the law does not favor estates remaining in abeyance, during the ten days following the death of the testatrix. The rule stated in *Armstrong* v. *Barber,* 239 Ill. 389, is against the postponement of the vesting of estates. That rule has been frequently applied. (*Kohtz* v. *Eldred,* 208 Ill. 60.) In the *Armstrong case,* however, this court said: "The devise to the trustees must be held valid, as it is an immediate devise of all the testator's property. * * * The estate in the trustees vested in interest and possession at the death of the testator, and therefore the rule invoked by appellee has no application." That is exactly the case here. The trustees, James P. Blake and John P. Oleson, were devised an immediate estate in fee simple subject to a trust determinable upon a certain event. At the termination of the trust the trustees were to perform a certain active duty, after which all right, title and interest of said trustees should terminate and cease.

If appellee survived his wife ten days the trustees were directed to convey all the property to him "without restriction of any sort." We cannot ignore the plain meaning of those words. The same words were used in paragraph (d) of the third clause, where the testatrix directed the trustees to apportion and make over certain articles to her children share and share alike, "without restriction of any sort." The presumption is that the words were used in the same sense in both paragraphs. (*Abrahams* v. *Sanders,* 274 Ill. 452; *Potter* v. *Potter,* 306 Ill. 37.) It is obvious that she could not have intended that her personal ornaments, household goods, etc., should be apportioned and turned over to her children in any other than absolute ownership and title. There is nothing in the context of the entire will from which any construction can be made to destroy or modify the plain meaning of the words used in paragraphs (a) and (b) and we can conceive of no other conclusion than that reached by the arbitrators and the trial court, that appellee took a fee-simple title by virtue of his conveyance from the trustees named in the will.

This conclusion finds support in cases in which clauses using such terms as "without restriction," (*Becker* v. *Becker,* 206 Ill. 53,) "free from all restraint," (*Giles* v. *Anslow,* 128 Ill. 187,) "subject only to this restriction," (*Muhlke* v. *Tiedemann,* 177 Ill. 606,) "to have full control," (*Melies* v. *Beatty,* 313 Ill. 418,) and "to have and to hold absolutely," (*Smith* v. *Bedell,* 349 Ill. 523,) were construed.

To interpolate in paragraph (a) the words "successor trustee" by implication in connection with the positive directions to the trustees as contended by appellant's counsel would do violence not only to the plain terms of said paragraphs, as well as other provisions of the will, but would also contravene a definite rule of construction too well known to be ignored. We cannot assume a given intention

on the part of the testatrix, and since her intention is clearly manifested, admittedly in the form required by law, we must uphold it, even though a different result would be reached by applying rules of construction to specific clauses. (*Cahill* v. *Michael,* 381 Ill. 395.) Courts are not permitted to reform wills by adding words thereto or disregarding words, phrases and clauses, where there is no ambiguity, and extrinsic evidence is never admissible to vary the intent as clearly expressed in the will. *Knight* v. *Knight,* 367 Ill. 646.

No specific provisions of the will justify the conclusion that there is any real ambiguity in the instrument. That the testatrix had in mind the possibility of death in a common disaster is obvious because she first provided what should be done with her property if her husband did not survive her ten days, and in paragraph (i) of the third clause she directed the disposition in the event that neither her husband nor any of her children survived her. The sixth clause of the will manifests clearly her purpose to have cotrustees and not a single successor trustee. In each paragraph in which directions were given the same purpose is disclosed because she used the plural "the trustees." The fourth clause concerning the payment of inheritance and estate taxes has no tendency to explain her intention as to the disposition of her property.

Appellant's counsel insist that the fifth and eighth clauses disclose an intent contrary to the provisions of paragraphs (a) and (b) of the third clause and that when the entire will is considered it is clear that the testatrix intended the trust to continue, even if appellee survived her for ten days, irrespective of the provision that if he survived to the end of ten days after her death, the trustees should convey and deliver all the property to him without restriction of any sort, and in disregard of the additional words, "In which event all right, title and interest in or to

my estate on the part of said trustees shall terminate and cease." With that contention we cannot agree because it would not harmonize the various provisions of the will with the general plan of distribution provided by the testatrix.

By the fifth clause she merely included the usual precautionary provisions against partial intestacy. There were specific bequests in the second clause which might lapse or be renounced. The provisions of the eighth clause nominating and appointing appellee as guardian of the estate of their son Raymond, and of any other minor beneficiary, who might survive her, is not entirely inconsistent with the disposition to appellee of the absolute title to the property referred to in paragraph (a) of the third clause. Certainly it is not sufficiently clear to overthrow the intention clearly manifested by all the other provisions of the will. Nor do we regard it as creating an ambiguity sufficient to admit evidence of circumstances surrounding the execution of the will, in the absence of any offer of evidence disclosing its nature and purpose.

We are mindful of the rule that where the language is such that from the entire will the intention of the testator is doubtful, the language of the will must be read in the light of the circumstances surrounding the testator and the beneficiaries at the time the will is made. But there is an exception thereto, which is that extrinsic evidence of surrounding circumstances is never admissible to vary the intent clearly expressed in the will. (*Bimslager* v. *Bimslager*, 323 Ill. 303; *Lenzen* v. *Miller*, 378 Ill. 170; *Cahill* v. *Michael*, 381 Ill. 395.) It is the settled policy of this court to adopt the construction of a will that will give an estate of inheritance to the first devisee unless other limiting or qualifying clauses in the will clearly and unequivocally disclose that it was the intention of the testator to limit or qualify the estate granted. (*Becker* v. *Becker*, 206 Ill. 53.) Appellee was the first beneficiary provided

for in the will and the efforts of appellant's counsel have been directed toward creating an ambiguity in the provisions of the will, by the argument that from a consideration of subsequent clauses it is manifest that it was not the intention of the testatrix to vest a beneficial interest in appellee. Reliance is placed on *Allen* v. *McFarland,* 150 Ill. 455, where the testator left all his property "in the hands of my wife, * * * to manage to the best interests of our children and herself." This court there held that no words of devise were used hence no absolute title was devised to the wife. That and other cases cited by appellant's counsel come fairly within the late announcement of this court in *Cahill* v. *Michael,* 381 Ill. 395, that cases upon the construction of wills do not have the controlling force as precedents that they do in other cases for the reason that the form of a will does not follow a common standard but is a writing found in a great variety of forms and executed under circumstances peculiar to each individual case. (*Walker* v. *Walker,* 283 Ill. 11; *Johnston* v. *Herrin,* 383 Ill. 598.) Unless a will case cited is in all respects directly in point and agrees in every circumstance with the case before the court, it will have little or no weight. *Armstrong* v. *Barber,* 239 Ill. 389; *Orr* v. *Yates,* 209 Ill. 222.

The testatrix must be presumed to have known the law, (*McCormick* v. *Hall,* 337 Ill. 232; *Walker* v. *Walker,* 283 Ill. 11; *Rudolph* v. *Rudolph,* 207 Ill. 266;) that her husband could renounce the will and take under the law, which would thereby have diminished the trust estate. The aggregate amount left conditionally to appellant was $200,000, which would be one fourth of the estimated value of the entire estate. The subsequent amounts payable to the other children were subject to the amount payable to appellant. It is not agreeable to reason that the testatrix would have intended such a result, in the event of a renunciation by her husband, that only Robert, a foster son, would receive

the total amount provided for him while children of her own flesh and blood would have their portion diminished by the amount her husband would take under the law. No intent to disinherit her husband entirely can be gathered from the will, even by any reasonable conjecture. The decision of the arbitrators was right and the decree affirming the award must° be affirmed.

*Decree affirmed.*