Martha RAFT, Executrix of the Estate of Dean Raft, Deceased, Plaintiff,

v.

UNITED STATES of America, Defendant.

No. 89–3225.

United States District Court, C.D. Illinois, Springfield Division.

Nov. 19, 1991.

Gregory Harris, Springfield, Ill., Gerald J. Zafft, Coburn, Croft & Putzell, St. Louis, Mo., for plaintiff.

James A. Lewis, Asst. U.S. Atty., Springfield, Ill., Alexandra E. Nicholaides, Dept. of Justice, Tax Div., Washington, D.C., for defendant.

## OPINION

RICHARD MILLS, District Judge:

Testamentary intent and will interpretation.

The jury found that the Executrix was entitled to a marital deduction for the entire residue of decedent's estate.

The United States made a Motion for Judgment Notwithstanding the Verdict or, in the Alternative, for a New Trial.

The alternative motion is allowed.

New trial.

### I.  Facts

Dean Raft, M.D., and his wife were both born in Greece and both became naturalized American citizens. Dr. Raft suffered a heart attack on June 24, 1984 and five days later—while still hospitalized—he prepared a holographic will. He died in the hospital on July 1, 1984.

Dr. Raft was survived by his wife, Martha, and three children, Areti ("Rita") who was then 24 years old, Alex, who was 20, and Christy, who was 14.

The oldest daughter, Rita Raft, has an extensive record of mental commitments and treatments. She has also been in numerous legal difficulties and, at the time of her father's death, was facing "very serious criminal charges."

Dr. Raft's holographic will provides in its entirety:

I leave everything to my wife Martha, Alex and Christy.

To Rita I leave $50,000 trust with Martha as custodian to be used as she has to, for my beloved but very unfortunate child.

I give my beloved wife Martha power of attorney to handle Rita's situation and affairs as she always has.

I give my wife power of attorney to handle the affairs of my mother Areti Raftopoulos.

Martha will be lifetime custodian for Alex and Christy's inheritance.

On July 30, 1984, Martha Raft filed a Petition for Interpretation of the Last Will and Testament of Dean Raft in Macoupin County Circuit Court. During the pendency of that proceeding Plaintiff filed an estate tax return claiming a marital deduction in an unknown amount. This indefinite filing was necessary because the tax preparer felt unable to determine the correct amount of the marital deduction without judicial interpretation of the will.

Plaintiff's counsel in the circuit court proceedings stated in his opening statement that: "[F]irst of all, I'd like to inform the Court that we need an interpretation of this Will primarily because of the tax returns...."

The parties to the Macoupin County lawsuit were Martha, Alex, Christy and Rita Raft. The United States was not a party.

On September 26, 1985, the Macoupin County Circuit Court entered an *agreed* order declaring that Martha Raft had a general power of appointment over all the assets of her husband's estate other than the $50,000 trust. More particularly, the Court found:

4. That the decedent and his wife Martha were of Greek birth, naturalized American citizens, and that Greek family structure is of an extended nature spanning generations.

5. That the Will considered as a whole gives Martha Raft, wife of Dean Raft, control over the property of all his possible heirs, including his mother, who apparently receives nothing from this will.

6. That it appears that the primary reason for the drafting of this instrument

was to limit the amount of Dean Raft's Estate that his wife could expend on his daughter Rita, a disabled adult.

\* \* \* \* \* \*

9. That the testimony shows that the financial affairs of the family in the past as to the needs of the decedent's children have been managed by Martha Raft.

10. That it is apparent that the decedent intended his wife to have full control over all of his assets with the exception that he wanted to limit the amount of money that could be used for his disabled daughter.

11. That taken as a whole it appears clear that the decedent gave and intended a general power of appointment to be in his wife, Martha Raft, for life over any of his funds that she might see fit to expend on herself, his daughter, Christie, or his son, Alex (who is now and was at the time of decedent's death an adult) or anyone else, including his mother.

12. That the Will imposes no restriction on Martha Raft as to her personal use of the funds, more particularly the will does not say:

1. How much, if any money, Alex or Christie are to receive.

2. When, or in what form any inheritance would take.

3. Any age when Alex or Christie may become entitled to money.

4. What amount or percentage Alex or Christie would receive.

5. How Alex or Christie would receive any funds.

6. If Alex and Christie are entitled to any specific sum at all.

7. That no provision is made for distribution of any of decedent's estate should Martha die.

8. That there is no provision restricting Martha Raft of using any principal or interest for any reason.

13. That this is in direct contrast to the specific limited bequest to Rita Raft, a disabled adult.

WHEREFORE, it is hereby ordered:

1. That the Last Will and Testament of Dean Raft, deceased granted to his wife, Martha Raft a general and unlimited power of appointment over all assets of his estate to administer as she sees fit.

\* \* \* \* \* \*

An amended tax return was subsequently filed claiming a marital deduction of $990,-238 pursuant to I.R.C. § 2056.

On May 19, 1988, the IRS assessed against Plaintiff a tax deficiency of $184,-382 and an addition to the tax of $18,438 plus interest. On August 19, 1988, Plaintiff paid the IRS $281,619.95, the full amount of the deficiency plus the addition to the tax and estimated interest to the date of payment of $78,799.64. Plaintiff paid additional interest in the amount of $3,849.60 on October 10, 1988.

Plaintiff filed a claim for a refund of the taxes paid. On July 25, 1989, the IRS sent notice that it had disallowed the claimed refund. Plaintiff then brought this action challenging the assessment and collection of the tax, the addition to the tax, and the interest.

Defendant filed a Motion for Partial Summary Judgment asserting that Dr. Raft's will could only be interpreted to leave the residual estate to Mrs. Raft, Alex, and Christy, with each taking one-third. Finding that the will was unclear and ambiguous, this court denied the motion because there existed a genuine issue of material fact to be resolved by the jury.

At trial, there was evidence that Dr. Raft was concerned that his wife spent too much on Rita and wanted to limit how much his wife could spend on her. Plaintiff's memorandum in opposition to the instant motions states: "The evidence is abundantly clear that Dr. Raft wanted to limit what Mrs. Raft could spend on Rita."

Alex and Christy testified that it was understood that when one parent died, the other parent would continue to control the money. Alex and Christy could generally have what they wanted, but they had to ask for it. Dr. Raft had told Alex that, because of their age, Alex and Christy weren't old enough to be handling money.

Mr. Drummond, a friend of Dr. Raft and Plaintiff's counsel in the Macoupin County

proceedings, tried to explain why Dr. Raft would write in his will, "I leave everything to my wife, Martha, Alex and Christy" if he intended for Alex and Christy to receive nothing. Mr. Drummond stated that Dr. Raft "always talked about his family as more of a unit. You know, he talked about his wife, his kids, his mother, I think his wife's grandfather, whatever." He then explained that Rita was "a piece of the unit that came off. It didn't fit." Dr. and Mrs. Raft controlled things, but they'd had some difficulties because Dr. Raft thought his wife wanted to spend too much on Rita.

Mrs. Raft testified that she believed the $50,000 trust was meant to limit the amount of money Rita could get. It was her impression that she "was to be lifetime custodian for Christy's and Alex's, and I would have it for my lifetime, and then I would give it [whatever was left] to Alex and Christy."

On March 14, 1991, a jury found that the Estate of Dean Raft was entitled to a marital deduction under I.R.C. § 2056 for the entire estate, after deducting the $50,000 set aside for Rita. With respect to this issue, the United States now moves for judgment notwithstanding the verdict or, in the alternative, a new trial.

## II. Judgment Notwithstanding the Verdict

■ A Motion for Judgment Notwithstanding the Verdict is "properly denied where the evidence, along with all inferences to be reasonably drawn therefrom, when viewed in the light most favorable to the party opposing such motion, is such that reasonable men in a fair and impartial exercise of their judgment may reach different conclusions." *Funk v. Franklin Life Ins. Co.*, 392 F.2d 913, 915 (7th Cir.1968). Unless the evidence supports only one reasonable conclusion, the court will respect the jury's verdict. *General Foam Fabricators, Inc. v. Tenneco Chemicals, Inc.*, 695 F.2d 281, 287 (7th Cir.1982). In support of its motion, Defendant contends the jury's verdict on the marital deduction issue was contrary to the only reasonable conclusion, and that the Court should have interpreted the will as a matter of law. The Court must disagree.

"[T]he purpose of construing a will is to give it the ... interpretation which the testat[or] intended." *Ickes v. Ickes*, 386 Ill. 19, 25, 53 N.E.2d 585 (1944). Where the terms of a will are unclear and ambiguous, the testator's intent becomes a question of fact for the jury. As previously stated, Defendant's motion for summary judgment was denied because there existed genuine issues of material fact to be resolved by the jury.

At trial, the jury, apparently disregarding express language to the contrary, accepted Plaintiff's interpretation that the will left nothing to Alex and Christy Raft. The United States now asserts that as a matter of law the evidence demonstrated Alex and Christy are entitled to share two-thirds of the residual estate. While this is one plausible interpretation, there are other interpretations that a reasonable jury could accept. Therefore, the motion for judgment notwithstanding the verdict must be denied.

## III. New Trial

■ "In determining whether a new trial is warranted, the trial judge must decide if the verdict is against the weight of the evidence." *Forrester v. White*, 846 F.2d 29, 31 (7th Cir.1988). "Because the trial judge is uniquely situated to rule" on a motion for a new trial, "the trial court has great discretion in determining whether to grant a new trial." *Forrester*, 846 F.2d at 31. In this case, the manifest weight of the evidence shows that Dr. Raft did not intend to grant his wife a general power of appointment over the entire residue of his estate. Therefore, a new trial is warranted to determine the extent of the marital deduction due Martha Raft.

Section 2056(a) of the Internal Revenue Code allows a marital deduction from the value of the estate. Should the surviving spouse be granted a life estate, § 2056(b)(5) permits a marital deduction provided the spouse's power to appoint, whether exercisable by will or during life, is exercisable without restriction (i.e., a general power of appointment).

■ Plaintiff's admission that "Dr. Raft wanted to limit what Mrs. Raft could spend on Rita" undermines the possibility of a marital deduction under § 2056(b)(5). To qualify for the marital deduction, a power of appointment must be "absolute and unconditional." *Eckel v. United States*, 259 F.Supp. 184, 186 (S.D.N.Y.1966). A condition that limits the amount of funds from the residue that can be expended for Rita's benefit is inconsistent with a claim for a marital deduction for the entire residue under § 2056(b)(5).

The application of § 2056(a) to this case depends upon the jury's determination of Dr. Raft's intent and, correspondingly, its interpretation of his will. While intent is determined by the trier of fact, the jury cannot disregard words, phrases and clauses that contravene the intent clearly expressed in the will. *Ickes*, 386 Ill. at 29, 53 N.E.2d 585. By finding the estate was entitled to a marital deduction for the entire residue of the estate, the jury disregarded at least part of the express language: "I leave everything to my wife Martha, Alex and Christy" and "Martha will be lifetime custodian for Alex and Christy's inheritance."

The statement "I leave everything to my wife Martha, Alex and Christy" certainly appears to leave something to Alex and Christy. Nonetheless, based on Mr. Drummond's testimony that Dr. Raft always referred to his family as a unit, this phrase, standing alone, might be interpreted as not granting Alex and Christy anything. However, the statement "Martha is to be lifetime custodian of Alex and Christy's inheritance," taken in conjunction with the first statement, virtually forecloses the possibility that Alex and Christy were to receive nothing. Making Martha "the lifetime custodian of Alex and Christy's inheritance" clearly involves the understanding that Alex and Christy had been given an inheritance. Further, it would make no sense for Dr. Raft to have appointed Martha as a lifetime custodian of an inheritance that would not come into being until the end of her lifetime.

Whatever Dr. Raft's intent, it most certainly was not to grant Martha the power to dispose of the assets without restriction. The evidence showed that Dr. Raft believed his wife might devote too many resources to his "unfortunate child," Rita, and, therefore, his will established a trust of $50,000 for her care. Under the interpretation of the will accepted by the jury, Martha Raft could expend the entire estate for Rita's benefit. The will also gives Martha a "power of attorney" to handle his mother's affairs, but includes no trust or bequest for his mother. The will makes Martha custodian of Alex and Christy's inheritance. Yet, under the interpretation of the will accepted by the jury, Alex and Christy would be entitled no more than Dr. Raft's mother. Their custodian would have no obligation to use the estate on their behalf.

The jury's verdict implied Martha had a general power of appointment, and that Alex and Christy received no inheritance. The Court can conceive of no way the jury could have reached its verdict without ignoring or "deleting" the last sentence of the will, and perhaps the first sentence as well. The verdict of the jury goes against the manifest weight of the evidence. Therefore, the motion for a new trial must be allowed.

### IV. Conclusion

From the evidence presented at trial, reasonable men could reach different conclusions as to what property interest the will granted Martha, Alex and Christy. The will could reasonably be interpreted to split the estate evenly among the three parties as the IRS argues. It could perhaps also be interpreted to distribute the estate among Martha, Alex and Christy in uneven proportions.

The second sentence of the will forms a "$50,000 trust with Martha as custodian" so that she may care for Rita. Arguably, the language naming Martha the "custodian for Alex and Christy's inheritance" could be interpreted as establishing a similar trust in their behalf.

The will might even be interpreted so as to qualify some portion of the estate for a marital deduction under I.R.C. § 2056(b)(5).

Plaintiff previously suggested that Martha was granted a life estate with Alex and Christy as remaindermen. Section 2056(b)(5) limits the marital deduction to that portion of the estate Martha has an unrestricted power to appoint. Therefore, any verdict based upon this provision must be for an amount less than the entire residual estate given the future interest granted the children.

Numerous reasonable verdicts could have been reached by the jury. The verdict that Martha Raft was entitled to a marital deduction for the entire residue of the estate, and impliedly finding that Martha Raft was granted a general power of appointment over all but $50,000 of the estate and that nothing was bequeathed to Alex and Christy, is one of the few verdicts the Court can not sustain.

As with the first trial, the outcome of a new trial will again depend essentially upon the jury's interpretation of the will. Considering the uncertainties associated with a new trial, the court seriously urges the parties to consider the possibility of settlement. In determining whether to uphold the jury's verdict, it was necessary for the Court to hypothesize what interpretation the jury might have accepted in arriving at its verdict. Should a new trial actually occur, the parties will be required to submit special interrogatories for each reasonable interpretation of the will.

Judgment notwithstanding the verdict cannot be granted because the will is susceptible of more than one reasonable interpretation. However, the verdict of the jury disregards express language of the will and is against the manifest weight of the evidence.

*Ergo*, Defendant's motion for judgment notwithstanding the verdict is DENIED; Defendant's motion for a new trial is ALLOWED.